[No. 55897–3.  En Banc.  March 29, 1990.]

THE CITY OF AUBURN, ET AL, *Appellants,* v. KING COUNTY, ET AL, *Respondents.*

448

*Perkins Coie*, by *David J. Burman* and *Lis Wiehl*, for appellants.

*Philip A. Talmadge* and *Bernard H. Friedman* (of *Talmadge & Friedman, P.S.*); *Norm Maleng, Prosecuting Attorney, Robert I. Stier, Senior Deputy*, and *Bradley J. Hillis, Deputy*, for respondents.

*Jack Leininger, Richard Andrews, James B. Gorham, Wayne D. Tanaka, Sandra Driscoll, Ralph I. Thomas*, and *Ronald C. Dickinson* on behalf of the Cities of Algona, Bellevue, Des Moines, Issaquah, Kent, Kirkland, and Mercer Island, amici curiae for appellants.

UTTER, J.—The City of Auburn and King County are involved in a dispute over payment for health services which the Seattle–King County Department of Public Health provides to the City. In a trial to the court, Auburn was ordered to arbitrate this dispute. The trial court found that the statutory provision governing health cost disputes requires arbitration and violates no constitutional prohibition. We affirm.

I

During 1983, King County conducted negotiations with the suburban cities within its borders. Finding of fact 10.[1] These negotiations led to contracts with all of these Cities, except Auburn, setting forth the health services which the County would provide and how much the Cities would pay. Finding of fact 9.

The Seattle–King County Department of Public Health has continued to provide health services to Auburn and to bill it for these services despite the lack of a contract. Finding of fact 11. Auburn made a partial payment in 1985, but has paid nothing since then. Finding of fact 12. The parties negotiated unsuccessfully about the amount to be paid from 1983 through 1988. Finding of fact 13.

The record does not disclose where the money sought from Auburn would come from. Auburn has limited authority to tax its residents and receives portions of some taxes levied statewide. See, e.g., RCW 82.14.030; RCW 82.44.020; RCW 82.44.150(2). In particular, it receives a portion of the motor vehicle excise tax earmarked for police, fire, or public health. RCW 82.44.150(4).

The County sought arbitration in August of 1987. On July 22, 1988, Auburn informed the County that it would

---

[1] Auburn disputed this fact and finding of fact 13 in its opposition to King County's motion to dismiss. Because Auburn did not assign error to either of these factual findings in its brief, we will consider them as verities on appeal. See RAP 10.3(g). Auburn did, however, properly assign error to the trial court's legal conclusion that good faith negotiations had taken place between the parties. We consider this issue because it was properly raised. We deny King County's motion to dismiss, which we passed to the merits.

not submit to arbitration and filed an action for declaratory judgment and a writ of mandamus.

The trial court concluded that Auburn owed money to the County and issued a writ of mandamus requiring Auburn to arbitrate the dispute over Auburn's financial contribution during the years 1985 through 1988. The trial court found as a matter of law that King County had engaged in good faith negotiations and had a legal right to insist on arbitration. Conclusion of law 10. Auburn appealed and the Cities of Algona, Bellevue, Des Moines, Issaquah, Kent, Kirkland, and Mercer Island filed an amicus brief supporting Auburn. We granted review because of the case's public importance. *See* RAP 4.2(a)(4).

## II

█ Auburn's argument that the Department of Social and Health Services (DSHS) has primary jurisdiction and that the statute of limitations restricts arbitration in this case must be considered first. The statutory provisions requiring DSHS to act in a health care emergency do not by their language establish that agency's primary jurisdiction in a dispute over health care costs. *See* former RCW 43.20A.600(4); former RCW 43.20A.640. There are no reasons in policy or language to reach such a result. The provision governing cost disputes requires arbitration. RCW 70.05.145.

The trial court correctly concluded that the statute of limitations by its language does not apply to arbitration. *See* RCW 4.16.130.

## III

State law clearly requires Auburn to pay for some portion of health services provided by the County. Every city must either provide public health services itself or purchase them from another health department. *See* RCW 70.05.020; RCW 70.05.030.

RCW 70.05.132 requires the city to pay the State or county for all costs incurred in enforcing health laws and rules. Cities must pay sums agreed upon for purchased

health services. RCW 70.05.145. The trial court correctly concluded that Auburn must pay something for county-provided health services.

RCW 70.05.145 requires arbitration when local governments cannot agree on how to allocate health costs. It requires arbitration "following a reasonable period of good faith negotiations".

The trial court found as a matter of law that the Seattle-King County Department of Public Health had bargained in good faith. Conclusion of law 10. Auburn disputes this.

It relies upon the affidavit of its finance director. This document states that King County did not negotiate in good faith because it never considered departing from the cost allocation formula it developed. Clerk's Papers, at 223-24.

■ Auburn cites no case law suggesting that failure to depart from a bargaining position constitutes bad faith negotiation. Because a state regulation recommends that a county use the same funding formula for all of the cities within its borders, it is impossible to conclude that the county's intransigence constitutes bad faith. *See* WAC 248-990-990(D)(1). The trial court correctly concluded that good faith negotiations transpired and triggered the duty to arbitrate.

## IV

Auburn argues that RCW 70.05.145 is unconstitutional because it delegates legislative and judicial power to the arbitrator. The trial court correctly concluded that the statutory scheme did not violate the nondelegation doctrine.

In *Barry & Barry, Inc. v. Department of Motor Vehicles*, 81 Wn.2d 155, 500 P.2d 540 (1972), *appeal dismissed*, 410 U.S. 977 (1973), we upheld a regulation determining the maximum fees of employment agencies against a nondelegation challenge. *Barry*, 81 Wn.2d at 156. Following *Barry*, we sustained arbitration against a nondelegation challenge and distinguished pre-*Barry* precedent striking arbitration.

*Spokane v. Spokane Police Guild*, 87 Wn.2d 457, 464, 553 P.2d 1316 (1976) (distinguishing *State ex rel. Everett Fire Fighters, Local 350 v. Johnson*, 46 Wn.2d 114, 278 P.2d 662 (1955)).

██ *Barry* rejected the notion that specific standards need to accompany the delegation of power to administrative agencies. *Barry*, at 161. *Barry* requires only (1) that the Legislature must generally define what is to be done and who is to do it, and (2) that procedural safeguards must exist to control administrative abuse. *Barry*, at 159. The legislation before us meets this test.

The legislation challenged here explains what must be done. The statute states that a board of arbitration shall decide how much the city pays in a dispute. RCW 70.05-.145.

The Legislature has also determined who must make this decision. The board consists of a representative of the health department, a representative of the city involved, and a third party appointed by the other two representatives. If the two parties cannot agree on a third representative, a judge appoints the third member. RCW 70.05.145.

To be constitutional the delegation must have procedural safeguards against abuse. Unlike the statute at issue in *Spokane*, the statute at issue here does not specifically provide for judicial review. *Cf. Spokane*, 87 Wn.2d at 463. But a writ of *certiorari* is available. The writ can be granted if the board of arbitration exceeds its jurisdiction, acts illegally, proceeds in violation of the common law, or conducts erroneous or void proceedings. RCW 7.16.040.

The composition of the board itself also safeguards the parties against arbitrary action. The parties control the board membership. Absent agreement about the third member, the judiciary appoints the third member.

Administrative procedures tending to discourage arbitrary action provide adequate safeguards when combined with limited judicial review. *See Polygon Corp. v. Seattle*, 90 Wn.2d 59, 66–67, 578 P.2d 1309 (1978) (SEPA upheld because hearings occur and judicial review is available

under the clearly erroneous standard); *McDonald v. Hogness,* 92 Wn.2d 431, 446–47, 598 P.2d 707 (1979), *cert. denied sub nom., McDonald v. Gerberding,* 445 U.S. 962 (1980) (judicial review under arbitrary and capricious or abuse of discretion standards and published criteria for body's decisions suffice).

Because governments appoint the members of the arbitration panel, the composition of the panel combined with the limited judicial review available by writ should prevent abuse. *Cf. United Chiropractors of Wash., Inc. v. State,* 90 Wn.2d 1, 4, 7, 578 P.2d 38 (1978) (limited judicial review does not suffice when members of a licensing board are appointed by legislatively favored private organizations). The delegation is therefore constitutional.

## V

Auburn also argues that any arbitration award would constitute double taxation in violation of the equal protection clause of the United States Constitution. Because such charges do not constitute taxes at all, we need not decide whether double taxation will occur or whether double taxation violates provisions of any constitution.

■ Fees assessed against a municipality do not generally constitute taxes upon its citizens. A statute which may cause a need for a tax by creating liability for a municipality was held not to itself constitute a tax in *Spokane v. Spokane Police Guild, supra* at 461. *Spokane* contended that binding arbitration would increase its costs and therefore constitute a tax in violation of the constitution. We rejected that argument.

In *Lynnwood v. Snohomish Cy.,* 48 Wn. App. 210, 738 P.2d 699 (1987), the Court of Appeals followed *Spokane* and rejected an argument precisely paralleling Auburn's argument. Several Cities in *Lynnwood* challenged a statute which required municipalities to reimburse the County for the cost of voter registration within their jurisdictions. *Lynnwood,* 48 Wn. App. at 211. The Cities argued that city residents pay the expense of registration twice, whereas

county residents outside of the cities pay only once. *Lynnwood,* at 212.

Similarly, Auburn argues that the county taxes its citizens twice. Brief of Appellants, at 14. Auburn residents pay taxes which help support the county health department and then the City pays the County for the services. The record before us does not establish that a fee assessed against Auburn would force Auburn to levy additional taxes against its residents. Auburn receives revenues earmarked for health services which unincorporated areas do not receive. RCW 82.44.150(4). Questions of general fairness are for the Legislature to determine.

The *Lynnwood* court rejected the argument that the assessment of a fee against a town for a service constituted a tax. *Lynnwood,* at 212, 213. We agree with the *Lynnwood* court that a fee which *might* cause a tax is not a tax. *See Spokane,* 87 Wn.2d at 461.

CONCLUSION

The legislation at issue here constitutionally requires Auburn to arbitrate this dispute. We affirm the trial court.

CALLOW, C.J., and BRACHTENBACH, DOLLIVER, DORE, ANDERSEN, DURHAM, SMITH, and GUY, JJ., concur.