236 P.3d 182 (2010)
Michael BROOM; Kevin Broom; and Andrea Broom, Respondents,
v.
MORGAN STANLEY DW INC. and Kimberly Anne Blindheim, Petitioners.
No. 82311-1.
Supreme Court of Washington, En Banc.
Argued January 28, 2010.
Decided July 22, 2010.
*183 Michael T. Garone, Thomas Vincent Dulcich, Schwabe Williamson & Wyatt PC, Portland, OR, Stephanie Pennix Bernsten, Schwabe Williamson & Wyatt PC, Seattle, WA, for petitioners.
Kevin Patrick Sullivan, Michael T. Schein, Sullivan & Thoreson, Seattle, WA, for respondents.
Lawrence H. Vance, Jr., Winston & Cashatt, Spokane, WA, amicus counsel for Associated General Contractors of Washington.
Carl Jerome Carlson, Carlson & Dennett PS, Seattle, WA, Joseph Long, Norman, OK, amicus counsel for Public Investors Arbitration Bar Association.
David Michael Paltzik, Greenberg Traurig LLP, Phoenix, AZ, Ira Hammerman, Kevin Carroll, Washington, DC, Bradford Kaufman, Jason Fredo, Greenberg Traurig, West Palm Beach, FL, amicus counsel for The Securities Industry and Financial Markets Association.
George M. Ahrend, Ahrend Law Firm PLLC, Moses Lake, WA, Bryan Patrick Harnetiaux, Spokane, WA, amicus counsel for Washington State Association for Justice Foundation.
C. JOHNSON, J.
¶ 1 This case asks us to interpret former RCW 7.04.160 (1943),[1] which lists the grounds for vacating arbitration awards arising from private arbitration proceedings. We must decide whether legal error on the face of the award is a valid basis for vacating an award. If so, then we must determine whether the arbitrators' application of state statutes of limitations, thus barring most of the respondents' claims, constitutes facial legal error. The trial court vacated the arbitration award, concluding that the application of the statutes of limitations was facially erroneous. The Court of Appeals affirmed. We affirm the Court of Appeals; the arbitral panel's application of state statutes of limitations to the respondents' claims was facially erroneous.

FACTUAL AND PROCEDURAL HISTORY
¶ 2 In the late 1990s and early 2000s, Dick Broom kept a retirement investment account with Paine Webber. When Broom's broker at Paine Webber retired, Kimberly Blindheim took over his accounts. Blindheim liquidated Broom's blue chip stocks and purchased high tech stocks. After these purchases, Broom's account decreased in value by 25 percent. When Blindheim moved from Paine Webber to Morgan Stanley in June 2000, Broom transferred his accounts with her.
¶ 3 Once at Morgan Stanley, Broom's accounts continued to decline in value until his death in 2002. Broom's children (the Brooms) were the beneficiaries of the accounts. In September 2005, the Brooms filed a notice of claim with Morgan Stanley, alleging negligence, failure to make suitable investment recommendations, violation of state and federal securities law, breach of fiduciary duty, misrepresentation and omissions, failure to supervise, breach of contract, and violation of Washington's Consumer Protection Act (CPA), chapter 19.86 RCW.
¶ 4 In accord with their arbitration agreement, the parties submitted their dispute to the National Association of Securities Dealers. Morgan Stanley moved to dismiss the Brooms' claims, asserting, among other things, that the claims were barred by the applicable statutes of limitations. In May 2006, the arbitration panel ruled that all of *184 the Brooms' claims except for the CPA claim were barred by state and federal statutes of limitations. The Brooms moved for reconsideration, and Morgan Stanley moved to dismiss the CPA claim. The panel denied the Brooms' motion and dismissed the remaining CPA claim.
¶ 5 The Brooms filed a complaint in superior court and moved to vacate the arbitration award. They argued that the award contained facial legal error because state statutes of limitations do not apply to arbitration. The trial court agreed and vacated the award.
¶ 6 The Court of Appeals affirmed, holding that facial legal error is a basis for vacating an award and that state statutes of limitations do not apply to arbitration proceedings. Morgan Stanley petitioned this court for review, which we granted. Broom v. Morgan Stanley DW, Inc., 165 Wash.2d 1040, 205 P.3d 132 (2009). The Securities Industry and Financial Markets Association, the Public Investors Arbitration Bar Association, the Associated General Contractors of Washington, and the Washington State Association for Justice Foundation filed amicus briefs.

ISSUES
(1) Is "legal error on the face of the award" a valid ground for a court to vacate an arbitration award?
(2) If so, may arbitrators apply state statutes of limitations to bar the claims presented?

ANALYSIS

(1) Legal Error on the Face of the Award

¶ 7 Private arbitration in Washington State is governed exclusively by statute. Godfrey v. Hartford Cas. Ins. Co., 142 Wash.2d 885, 893, 16 P.3d 617 (2001). When the Brooms entered into the arbitration agreement and submitted their claims for resolution, arbitration was governed by the Washington Arbitration Act (WAA), former chapter 7.04 RCW.[2] The relevant provision permitted a court to vacate an arbitration award under the following circumstances:
(1) Where the award was procured by corruption, fraud or other undue means.
(2) Where there was evident partiality or corruption in the arbitrators or any of them.
(3) Where the arbitrators were guilty of misconduct, in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence, pertinent and material to the controversy; or of any other misbehavior, by which the rights of any party have been prejudiced.
(4) Where the arbitrators exceeded their powers, or so imperfectly executed them that a final and definite award upon the subject matter submitted was not made.
(5) If there was no valid submission or arbitration agreement and the proceeding was instituted without either serving a notice of intention to arbitrate, as provided in RCW 7.04.060, or without serving a motion to compel arbitration, as provided in RCW 7.04.040(1).
Former RCW 7.04.160.
¶ 8 Morgan Stanley focuses much of its argument on the statutory history of the WAA and the trial court's proper scope of review. But we previously addressed the scope of the trial court's review in Boyd v. Davis, 127 Wash.2d 256, 897 P.2d 1239 (1995), where we approved of facial legal error as an accepted basis for vacating an arbitral award. In Boyd, we suggested that such error indicates that the arbitrators exceeded their powers. 127 Wash.2d at 263, 897 P.2d 1239.
¶ 9 Our holding in Boyd was no outlier. We have repeatedly articulated a rule that explicitly includes facial errors of law as grounds for vacation. Davidson v. Hensen, 135 Wash.2d 112, 118, 954 P.2d 1327 (1998); Boyd, 127 Wash.2d at 263, 897 P.2d 1239; N. State Constr. Co. v. Banchero, 63 Wash.2d *185 245, 249-50, 386 P.2d 625 (1963). The Boyd majority embraced the existing rule, whereby facial legal error constitutes an instance in which arbitrators "exceeded their powers," thus permitting vacation of the award. The Boyd concurrence correctly observed that this rule was originally adopted as an interpretation of Washington's 1925 arbitration act, which did include legal error as an explicit ground for vacation. Boyd, 127 Wash.2d at 266, 897 P.2d 1239 (Utter, J., concurring). The concurrence reasoned that we have improperly continued to apply this rule, ignoring the change in its statutory underpinnings. However, it is the Boyd majority that continues to guide us. Even after the enactment of the WAA, we have consistently approved of the Boyd rule, embracing facial legal error as a ground for vacation.
¶ 10 Morgan Stanley argues that we implicitly overruled Boyd when we approved of the Boyd concurrence in Malted Mousse, Inc. v. Steinmetz, 150 Wash.2d 518, 527, 79 P.3d 1154 (2003). However, as the Brooms point out, that reference to Boyd set no precedent. In Malted Mousse, we analyzed the standard of review governing mandatory arbitration. As part of that analysis, we contrasted the standards governing review of mandatory arbitration with those governing review of private arbitration. It was in this context that we referenced the Boyd concurrence, observing that the legal error standard for vacating a private arbitration award originated in a now-repealed statute. That reference played no part in our holdingthat grounds for vacating a private arbitration award do not apply to a mandatory arbitration award. Our holding in Malted Mousse thus provides no guidance in interpreting the grounds for vacating a private arbitration award.
¶ 11 Moreover, nothing in our Malted Mousse analysis can be read to overrule our previous cases. We have previously disapproved of overruling binding precedent sub silentio. State v. Studd, 137 Wash.2d 533, 548, 973 P.2d 1049 (1999). Thus, Morgan Stanley's argument that Malted Mousse implicitly overruled our prior cases and abandoned the facial legal error ground is unpersuasive.
¶ 12 Importantly, the legislature has not seen fit to clarify the statutory grounds for vacating an arbitral award. We have observed that "`[t]he Legislature is presumed to be aware of judicial interpretation of its enactments,' and where statutory language remains unchanged after a court decision the court will not overrule clear precedent interpreting the same statutory language." Riehl v. Foodmaker, Inc., 152 Wash.2d 138, 147, 94 P.3d 930 (2004) (quoting Friends of Snoqualmie Valley v. King County Boundary Review Bd., 118 Wash.2d 488, 496-97, 825 P.2d 300 (1992)). After the Boyd court's characterization of facial legal error as an instance of arbitrators exceeding their powers, the legislature's failure to provide further clarification suggests its approval of that characterization.
¶ 13 Morgan Stanley argues, in essence, that we should overturn years of precedent approving of facial legal error as a ground for overturning arbitral awards. We have held that "`[t]he doctrine of stare decisis "requires a clear showing that an established rule is incorrect and harmful before it is abandoned."'" State v. Devin, 158 Wash.2d 157, 168, 142 P.3d 599 (2006) (quoting Riehl, 152 Wash.2d at 147, 94 P.3d 930 (quoting In re Rights to Waters of Stranger Creek, 77 Wash.2d 649, 653, 466 P.2d 508 (1970))). Morgan Stanley and two amici, the Associated General Contractors and the Securities Industry and Financial Markets Association, argue that the facial legal error standard is harmful because it undermines the purposes of arbitration: finality and efficiency. But these arguments characterize the legal error standard as much broader than it is.
¶ 14 In fact, the facial legal error standard is a very narrow ground for vacating an arbitral award. When judicial review is limited to the face of the award, the purposes of arbitration are furthered while obvious legal error is avoided. But courts may not search the arbitral proceedings for any legal error; courts do not look to the merits of the case, and they do not reexamine evidence. Despite arguments to the contrary, the facial legal error standard does not permit *186 courts to conduct a trial de novo when reviewing an arbitration award. Boyd, 127 Wash.2d at 262, 897 P.2d 1239. Through the years, our courts have applied the facial legal error standard carefully, vacating an award based on such error in only four instances, one of which was the case below.[3] Thus, given the narrowness of the facial legal error standard and the care with which it is applied, we see no harm in its continued application.
¶ 15 Washington is not the only state to provide for this type of review of arbitral awards. Other jurisdictions have also adopted a narrow facial legal error ground for vacating arbitration awards. See Anthony v. Kaplan, 324 Ark. 52, 918 S.W.2d 174, 178 (1996); First Health Group Corp. v. Ruddick, 393 Ill.App.3d 40, 331 Ill.Dec. 971, 911 N.E.2d 1201, 1213 (2009); Parr Constr. Co. v. Pomer, 217 Md. 539, 144 A.2d 69, 72 (1958); Washington v. Washington, 283 Mich.App. 667, 770 N.W.2d 908, 912 (2009); Tiberghein v. B.R. Jones Roofing Co., 151 N.H. 391, 856 A.2d 21, 24 (2004); State of New Jersey, Office of Employee Relations v. Commc'ns Workers of Am., 154 N.J. 98, 711 A.2d 300, 307 (1998); Welty v. Brady, 123 P.3d 920, 924 (Wyo.2005).
¶ 16 We hold that facial legal error falls within former RCW 7.04.160(4) as one instance in which arbitrators exceed their powers and that it is a valid ground to vacate an arbitration award.

(2) Statutes of Limitations

¶ 17 The parties in this case executed an arbitration agreement in which they agreed that the arbitration proceedings would be governed by the National Association of Securities Dealers Code of Arbitration Procedure (NASD Code). However, the parties did not explicitly state in their agreement that claims would be subject to Washington State statutes of limitations. We must thus determine whether, in the absence of such an indication, the arbitrators correctly applied state statutes of limitations to bar the Brooms' claims.
¶ 18 Morgan Stanley argues that, even if facial legal error is a valid ground for vacating an arbitral award, no such error existed here because the arbitration panel properly applied state statutes of limitations to dismiss the Brooms' claims. Morgan Stanley premises its argument on two separate issues: First, it argues that the NASD Code permits arbitration panels to apply state statutes of limitations. Second, it asserts that, under our previous cases, arbitral proceedings are "actions" within the purpose of Washington's statutes of limitations. We interpret these issues as being interrelated and discuss them in kind.
¶ 19 Morgan Stanley argues that the NASD Code permits arbitrators to make their own determinations regarding the applicability of state statutes of limitations. As part of their arbitration agreement, the parties agreed that their arbitration would be governed by the NASD Code. Section 10304 of that code, in place at the time of the parties' arbitration, provided as follows:
(a) No dispute, claim, or controversy shall be eligible for submission to arbitration under this Code where six (6) years have elapsed from the occurrence or event giving rise to the act or dispute, claim or controversy. The panel will resolve any questions regarding the eligibility of a claim under this Rule.
(b) Dismissal of a claim under this Rule does not prohibit a party from pursuing the claim in court. By requesting dismissal of a claim under this Rule, the requesting party agrees that if the panel dismisses a claim under the Rule, the party that filed the dismissed claim may withdraw any remaining related claims without prejudice and may pursue all of the claims in court.
(c) This Rule shall not extend applicable statutes of limitations; nor shall the six-year time limit on the submission of claims apply to any claim that is directed *187 to arbitration by a court of competent jurisdiction upon request of a member or associated person.
NASD Code, section 10304 (2005) (emphasis added). Morgan Stanley argues that, under this rule, the authority to determine applicability of a particular statute of limitations lies with the arbitrators, not with the courts. The Court of Appeals disagreed, reasoning that this section cannot be read to authorize arbitrators to apply state statutes of limitations. Broom v. Morgan Stanley DW, Inc., noted at 146 Wash.App. 1043, 2008 WL 4053440, at *5. We agree with Morgan Stanley that section 10304 should be interpreted by arbitrators, but we do not find that this conclusion permitted the arbitrators to apply state statutes of limitations in this case.
¶ 20 The parties and various amici submit conflicting evidence as to the correct interpretation of the NASD rule in effect at the time of the arbitration. Citing a proposed rule adopted into the current NASD Code, the Public Investors Arbitration Bar Association (PIABA) supplies evidence that the rule refers only to the statutes of limitations for filing claims in court. In addition, PIABA provides examples suggesting that this is the common understanding of the rule among industry insiders experienced in NASD arbitration. However, Morgan Stanley submitted contradictory evidence showing that NASD arbitrator training guides, in effect at the time of the arbitration, direct arbitrators to apply state and federal statutes of limitations to parties' claims. We do not pass judgment on this evidence, however, as the task of interpreting section 10304 falls to arbitrators, not to this court. NASD Code, section 10324; Howsam v. Dean Witter Reynolds, Inc., 537 U.S. 79, 85, 123 S.Ct. 588, 154 L.Ed.2d 491 (2002).
¶ 21 The correct interpretation of NASD section 10304 is not dispositive here, however. We determine independently whether our state statutes of limitations may apply to arbitral proceedings. The Brooms argue, and the Court of Appeals agreed, that our prior cases preclude arbitration proceedings from qualifying as "actions" for the purpose of applying state statutes of limitations. The Brooms rely primarily on two cases for the proposition that state statutes of limitations never apply to arbitrations. In 1967, we held that arbitration proceedings were not subject to the statute requiring a notice of claim to be filed with a municipality prior to instituting an action against it. Thorgaard Plumbing & Heating Co. v. County of King, 71 Wash.2d 126, 130, 132, 426 P.2d 828 (1967). In reaching this conclusion, we distinguished between judicial and arbitral proceedings and reasoned that the term "action" in the claim-filing statute could not refer to arbitrations. The Brooms argue that under Thorgaard, state statutes of limitations do not apply to arbitral proceedings.
¶ 22 Morgan Stanley points out that in an even more recent case, we held that the specific legal context of the case determines whether an arbitration proceeding is an "action" for the purpose of Washington statutes. Int'l Ass'n of Fire Fighters, Local 46 v. City of Everett, 146 Wash.2d 29, 36-37, 39-40, 42 P.3d 1265 (2002). In that case, we limited Thorgaard to its facts and distinguished the purposes of the statutes in each case. In Thorgaard, we considered the purposes of the former county nonclaim statute, RCW 36.45.010intended to put the county on notice of an impending actionand the WAA, former chapter 7.04 RCW. 71 Wash.2d at 129-30, 426 P.2d 828. In Fire Fighters, however, the labor arbitration was not governed by the WAA, and the statute at issue, RCW 49.48.030, was a remedial statute meriting liberal interpretation. 146 Wash.2d at 34, 39, 42 P.3d 1265. Thus, our cases together teach that we should examine the purpose of the statute before us to determine whether "action" includes arbitral proceedings in a given context.
¶ 23 In the present case, however, relevant precedent already exists to guide us. We previously held that by its language, a catch-all statute of limitations did not apply to arbitration. City of Auburn v. King County, 114 Wash.2d 447, 450, 788 P.2d 534 (1990). Morgan Stanley argues that City of Auburn is distinguishable from the present case because that case involved a different kind of arbitration. However, our conclusion in that case rested not on the type of arbitration involved, but on the language of the statute *188 of limitations. Importantly, the catch-all statute of limitations, RCW 4.16.130, is part of the same chapter as the general rule governing statutes of limitations that is before us here, RCW 4.16.005. Both sections refer only to "actions" and make no mention of arbitrations. In addition, the statutory limitation specific to securities claims states that "[n]o person may sue under this section more than three years after" certain events. RCW 21.20.430(4)(b) (emphasis added). Thus, City of Auburn guides us to conclude that RCW 4.16.005 does not apply to arbitration proceedings.
¶ 24 Further, in the arbitration statute before us, the legislature chose its statutory language carefully to distinguish between arbitrations and judicial proceedings. In this case, as in Thorgaard, the parties' arbitration was governed by the WAA. Throughout the WAA, the legislature refers to arbitration variously as "arbitration," "hearing," or "proceeding," and to lawsuits as "civil actions," "actions," or "suits." Former RCW 7.04.030,.040, .070, .120, .180 (1943). The legislature maintained the distinction between the two types of proceedings in the RUAA, carefully referring to arbitrations as "arbitration proceedings" and to lawsuits as "judicial proceedings" or "civil actions." RCW 7.04A.060,.080, .210. Nowhere in either act does the legislature refer to an arbitration as an "action." Nor does either act make state statutes of limitations applicable to arbitrations. This legislatively created distinction suggests that the legislature did not intend for arbitrations governed by the WAA and the RUAA to be deemed equivalent to judicial "actions."
¶ 25 The legislature's carefully chosen language, as well as its apparent approval of our statutory interpretation in City of Auburn, suggests that we have interpreted these statutes as intended. As we noted above, "[t]he Legislature is presumed to be aware of judicial interpretation of its enactments," and so absent a legislative change, we presume that the legislature approves of our interpretation. Friends of Snoqualmie, 118 Wash.2d at 496-97, 825 P.2d 300 (citing Glass v. Stahl Specialty Co., 97 Wash.2d 880, 887, 652 P.2d 948 (1982)). In the absence of a clear statement to the contrary by the Washington legislature, we thus read the statutory language and our own precedent to conclude that arbitration is not an "action" subject to state statutes of limitations in these circumstances.
¶ 26 Although arbitrators are empowered to interpret the NASD Code, their interpretations may not violate state law. And though arbitrators have the discretion to interpret section 10304 as they see fit, that discretion is bounded by Washington's case law and statutes. Because, under our cases, state statutes of limitations may not apply to arbitrations absent the parties' agreement, the arbitrators were not authorized to apply those limits to the Brooms' claims.
¶ 27 This result does not subject parties to the burden of facing stale and untimely claims, as Morgan Stanley argues. If desired, parties may agree contractually to the applicability of state statutes of limitations, in which case those limits would be applied by the arbitral panel. But here, no such agreement existed.[4] The arbitrators exceeded their powers by applying statutes of limitations inapplicable to arbitral proceedings.

CONCLUSION
¶ 28 We conclude that, in accordance with our previous case law, facial legal error is a valid ground for vacating an arbitration award. The arbitrators in this case erred by applying state statutes of limitations to bar the Brooms' claims. We affirm the Court of Appeals.
WE CONCUR: GERRY L. ALEXANDER, RICHARD B. SANDERS, TOM CHAMBERS, and DEBRA L. STEPHENS, Justices.
*189 MADSEN, C.J. (dissenting).
¶ 29 The majority fails to give effect to the parties' contractual agreement to arbitrate under the National Association of Securities Dealers Code of Arbitration Procedure (NASD Code). The problem with the majority's approach is that NASD Code section 10304 expressly addresses time limitations and NASD Code section 10324 expressly grants the power to the arbitrators to interpret and apply all provisions under the NASD Code. The arbitrators had the authority to interpret the parties' contractual agreement to arbitrate. Rather than permitting the arbitrators to exercise their authority to interpret and apply NASD Code section 10304, the majority instead determines itself whether state limitations of actions will apply. Because the majority takes for itself the arbitrators' power and responsibility, its decision is contrary to arbitration law and the public policy on which it rests.

Analysis
¶ 30 The majority determines that vacation for legal error is appropriate and that the legal error here is that the arbitrators exceeded their powers. See former RCW 7.04.160(4)(a) (1943) (court may vacate an arbitration award where the arbitrators exceeded their powers), repealed by Laws of 2005, ch. 433, § 50. I disagree.
¶ 31 "[A]rbitration stems from a contractual, consensual relationship." Balfour, Guthrie & Co. v. Commercial Metals Co., 93 Wash.2d 199, 202, 607 P.2d 856 (1980). An arbitration agreement is valid, enforceable, and irrevocable unless there are grounds to revoke the agreement. Former RCW 7.04.010 (1947), repealed by Laws of 2005, ch. 433, § 50; see RCW 7.04.060(1) (current codification of this principle); Barnett v. Hicks, 119 Wash.2d 151, 154, 829 P.2d 1087 (1992). The parties' contract here mandates that issues of time limitations are subject to arbitration. Thus, questions of time limitations were expressly within the powers of the arbitrators. Accordingly, deciding whether statutes of limitations applied to bar claims was not, contrary to the majority, in excess of the arbitrators' powers. Under the parties' contract, the meaning of NASD Code section 10304 was also for the arbitrators to resolve.
¶ 32 The parties agreed to submit this matter to arbitration under the standard NASD arbitration agreement. NASD Code section 10304, which governs the issue here, states:

10304. Time Limitation Upon Submission
(a) No dispute, claim, or controversy shall be eligible for submission to arbitration under this Code where six (6) years have elapsed from the occurrence or event giving rise to the act or dispute, claim or controversy. The panel will resolve any questions regarding the eligibility of a claim under this Rule.
....
(c) This rule shall not extend applicable statutes of limitations; nor shall the six-year time limit on the submission of claims apply to any claim that is directed to arbitration by a court of competent jurisdiction upon request of a member or associated person.
(Emphasis added.)
¶ 33 Because the parties explicitly agreed to section 10304, the court should defer to the arbitrators' decision, particularly given the nature of time limitations in the arbitration context. This very question was before the United States Supreme Court in Howsam v. Dean Witter Reynolds, Inc., 537 U.S. 79, 85, 123 S.Ct. 588, 154 L.Ed.2d 491 (2002). There, the Court held that "applicability of the NASD time limit rule is a matter presumptively for the arbitrator, not for the judge." Id. Among other reasons for this holding, the Court said that "the NASD arbitrators, comparatively more expert about the meaning of their own rule, are comparatively better to apply it. In the absence of any statement to the contrary in the arbitration agreement, it is reasonable to infer that the parties intended the agreement to reflect that understanding." Id.
¶ 34 It is undisputedly the province of the arbitrators to interpret and apply contracts for arbitration. Indeed, the United States Supreme Court pointed out in a very recent *190 case that grounds for vacation do not arise when an arbitrator interprets and applies the parties' agreement. Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp., ___ U.S. ___, 130 S.Ct. 1758, 176 L.Ed.2d 605 (2010). Moreover, NASD Code section 10324 expressly provides that "arbitrators shall be empowered to interpret and determine the applicability of all provisions under this Code." The NASD arbitrators were best positioned, and had the authority under the contract, to interpret and apply the terms of the parties' agreement on time limitations. That is what the arbitrators did, after considering the parties' extensive briefing and arguments regarding the applicability of state statutes of limitations.
¶ 35 The Court also determined in Howsam that its holding was compelled by the decisions of numerous state courts under the Revised Uniform Arbitration Act of 2000 (RUAA), which sought to "`incorporate' the holdings of the vast majority of state courts and the law that has developed under the [Federal Arbitration Act, 9 U.S.C. § 1]," [and which] states that an "`arbitrator shall decide whether a condition precedent to arbitrability has been fulfilled.'" Howsam, 537 U.S. at 85, 123 S.Ct. 588 (quoting RUAA § 6(c) & cmt. 2, 7 U.L.A. 12-13 (Supp.2002)). The Court noted that comments to RUAA also say that "`issues of procedural arbitrability, i.e., whether prerequisites such as time limits ... and other conditions precedent to an obligation to arbitrate have been met, are for the arbitrators to decide.'" Id. (quoting RUAA § 6 cmt. 2, 7 U.L.A. 13 (emphasis added)).
¶ 36 This case is not governed by the Washington revised uniform arbitration act, chapter 7.04A RCW (Wa-RUAA), as the majority notes. The Wa-RUAA has replaced the Washington Arbitration Act (WAA), former chapter 7.04 RCW. The WAA applies here. But as the majority also notes, the portions of the two acts respecting the ground for vacating arbitration awards that is relied on in this case are the same under the two acts. Majority at 183 n. 1. Significantly, the Wa-RUAA provides in addition that "[a]n arbitrator shall decide whether a condition precedent to arbitrability has been fulfilled." RCW 7.04A.060. This is the language relied on by the Court in Howsam when it determined that the arbitrator and not a court is to decide time limitations questions under NASD Code section 10304. Thus, the Wa-RUAA has both (a) the provision that the Court held in Howsam means that the arbitrator decides time limitations questions and (b) the same vacation provision that existed in the WAA and is relied on here, former RCW 7.04.160(4). RCW 7.04A.901 provides that "[i]n applying and construing this uniform act, consideration must be given to the need to promote uniformity of the law with respect to the subject matter among states that enact it."
¶ 37 From these elements, it becomes apparent that the majority has misapplied the WAA's standards for vacation of an arbitration award. The relevant vacation provisions in Wa-RUAA, RCW 7.04A.230, do not permit a court to conclude that an arbitrator's resolution of questions under NASD Code section 10304 is a legal error requiring vacation because another Wa-RUAA provision, RCW 7.04A.060(3), provides that arbitrators determine whether conditions precedent to arbitrability have been satisfied (construed to include time limitations questions). If the standard for vacation relied upon would not permit vacation under the Wa-RUAA, how is it that the very same standard permits vacation under the WAA? Put another way, under the majority opinion the standard for vacation at issue here under the WAA would not apply to permit vacation under these same facts if the issue arose under the Wa-RUAA. Because there is no indication that such a sea change was intended by the legislature when it enacted the Wa-RUAA, and the standard for vacation is the same, the court should decline the parties' invitation to turn a question involving a condition precedent to arbitration into a legal error justifying vacation.
¶ 38 The majority states, however, that although the arbitrators had the authority to interpret section 10304, they could not do so in violation of state case law that holds that state statutes of limitations do not apply in arbitration. Although I do not agree with the majority's apparent belief that any legal *191 determination an arbitrator makes is subject to revision by this court, it is not necessary to resolve this issue here. Here, the question involves applicability of state statutes of limitations and the effect of an arbitration agreement providing that limitations questions are for the arbitrator.
¶ 39 Under our precedent, parties may agree to a contractual limitations period that is shorter than provided by statute, provided that the shorter time frame is not unreasonable or prohibited by contract or public policy; this principle applies in arbitrations. See McKee v. AT & T Corp., 164 Wash.2d 372, 399, 191 P.3d 845 (2008); Adler v. Fred Lind Manor, 153 Wash.2d 331, 356, 103 P.3d 773 (2004); accord Beroth v. Apollo College, Inc., 135 Wash.App. 551, 562, 145 P.3d 386 (2006). This being the case, there is no legal bar to parties agreeing to submit limitations periods to arbitration.
¶ 40 Pursuant to the parties' agreement in this case, the arbitrators' concluded that state statutes of limitations apply, effectively "shortening" the limitations period from "none" (under the majority's analysis) to the limitations periods set by state statutes. There is no statute that prohibits the parties' agreement or the arbitrators' application of the state statutes of limitations. The periods of limitations are manifestly not unreasonable or contrary to public policy because they are the very limitations periods established by the legislature for the particular claims at issue.
¶ 41 Although the majority acknowledges that the parties may agree to apply state statutes of limitations, majority at 188, it nevertheless decides that the arbitrators' lacked discretion to apply the state statutes of limitations, apparently on the basis that the specific statutes of limitations were not expressly made part of the parties' agreement. The majority says that "the power to interpret [the] code ... does not equate to a power to contravene state law." Majority at 188 n. 4. But the parties agreed to submit limitations questions to arbitration thereby agreeing to the arbitrators' decisions on applicable limitations periods. And as explained, parties may lawfully agree to shorten limitations periods without "contraven[ing] state law."
¶ 42 The majority's decision conflicts with the parties' contractual agreement to submit the time limitations issues to the arbitrator and it conflicts with provisions in the WAA and the Wa-RUAA concerning vacation of arbitration awards when arbitrators exceed their powers. It also conflicts with the public policies underlying the legal principles governing arbitration.
¶ 43 Our state law favors the use of arbitration where the parties agree by contract to submit disputes to arbitration. The court has noted the importance of encouraging parties to arbitrate in "our ever more litigious society." Boyd v. Davis, 127 Wash.2d 256, 262, 897 P.2d 1239 (1995). "Arbitration is attractive because it is a more expeditious and final alternative to litigation." Id. Key to preserving arbitration as an effective form of alternative dispute resolution is refusing to permit litigation of issues that have appropriately been the subject of arbitration under the terms of the parties' contractual agreement to arbitrate.
¶ 44 Public policy favoring arbitration is particularly well-served when court dockets are particularly stressed, as they are under current budgetary restrictions. Unfortunately, at present, due to budget limitations, some courts in our state have been forced to delay civil litigation, sometimes indefinitely, in order to accommodate requirements for timely criminal proceedings. Under such circumstances, it is even more important to adhere to the public policy favoring arbitration.
The very purpose of arbitration is to avoid the courts insofar as the resolution of the dispute is concerned. The object is to avoid what some feel to be the formalities, the delay, the expense and vexation of ordinary litigation. Immediate settlement of controversies by arbitration removes the necessity of waiting out a crowded court docket.
Barnett, 119 Wash.2d at 160, 829 P.2d 1087 (citations omitted).
¶ 45 Finally, the majority has not considered the impact of the Federal Arbitration *192 Act, 9 U.S.C. § 1 et seq. (FAA, the Act). Although my primary disagreement with the majority is that the arbitrators, not the court, should decide whether state statutes of limitations apply under the parties' arbitration agreement, I believe that the standards for vacation that apply under the FAA apply in this case.
¶ 46 Congress enacted the FAA "[t]o overcome judicial resistance to arbitration," Buckeye Check Cashing, Inc. v. Cardegna, 546 U.S. 440, 443, 126 S.Ct. 1204, 163 L.Ed.2d 1038 (2006), and to declare "`a national policy favoring arbitration' of claims that parties contract to settle in that manner," Preston v. Ferrer, 552 U.S. 346, 352, 128 S.Ct. 978, 169 L.Ed.2d 917 (2008) (quoting Southland Corp. v. Keating, 465 U.S. 1, 10, 104 S.Ct. 852, 79 L.Ed.2d 1 (1984)). Section 2 of the Act provides that an arbitration agreement in "a contract evidencing a transaction involving commerce" is valid, irrevocable, and enforceable, except for revocation on grounds applicable to any contract. 9 U.S.C. § 2.
¶ 47 Because the brokerage agreement giving rise to the dispute here involves transactions impacting interstate commerce, the FAA applies to this NASD arbitration, as numerous cases show. See, e.g., ON Equity Sales Co. v. Pals, 528 F.3d 564 (8th Cir.2008); Lincoln Nat'l Life Ins. Co. v. Payne, 374 F.3d 672 (8th Cir.2004); Liberte Capital Group, LLC v. Capwill, 148 Fed.Appx. 413 (6th Cir.2005) (unpublished); MONY Sec. Corp. v. Bornstein, 390 F.3d 1340 (11th Cir. 2004); Wash. Square Sec., Inc. v. Aune, 385 F.3d 432 (4th Cir.2004); IDS Life Ins. Co. v. Royal Alliance Assocs., Inc., 266 F.3d 645 (7th Cir.2001); Decker v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 205 F.3d 906 (6th Cir.2000). This court has also determined that under the FAA all claims arising under a written brokerage agreement must be settled by arbitration in accord with the terms of the agreement. Garmo v. Dean Witter, Reynolds, Inc., 101 Wash.2d 585, 586, 681 P.2d 253 (1984).
¶ 48 Although the respondents argued to the Court of Appeals that the FAA does not govern this matter, the FAA was clearly invoked during the arbitration proceedings and the respondents themselves stated in a brief filed in that proceeding that "the Federal Arbitration Act controls NASD arbitrations." Clerk's Papers at 162.
¶ 49 The respondents seem to believe, however, that the FAA does not "preempt" state law on the scope of review, i.e., it does not "preempt" state law on vacation of arbitration of awards. However, if the FAA applies, so do its provisions on vacation and modification. The FAA does not permit vacation of an arbitration award under an "error of law" standard. Section 10 of the FAA contains very narrow grounds for vacating an award and review is under a highly deferential standard. "Courts are generally prohibited from vacating an arbitration award on the basis of errors of law or interpretation, and the express terms of 9 U.S.C. §§ 10 and 11 have been deemed the exclusive grounds for vacation or modification." Ainsworth v. Skurnick, 960 F.2d 939 (11th Cir.1992); see, e.g., Kyocera Corp. v. Prudential-Bache Trade Servs., Inc., 341 F.3d 987, 994 (9th Cir.2003); George Watts & Son v. Tiffany & Co., 248 F.3d 577 (7th Cir.2001).
¶ 50 Under the FAA, too, the superior court erred in vacating the arbitration award.

Conclusion
¶ 51 The parties contractually agreed to submit questions of time limitations to arbitration. The issue whether any of the plaintiffs' claims were barred by state statutes of limitations was properly before the arbitrators and was fully briefed and argued. However, the majority disregards the arbitrators' express authority under the parties' agreement to interpret and apply NASD Code section 10304. The majority's decision conflicts with established principles of law respecting agreements to shorten limitations periods, arbitration, and the policies underlying these legal principles.
¶ 52 I would reinstate the arbitration award on the basis that vacatur was improper.
¶ 53 For the reasons stated in this opinion, I dissent.
*193 WE CONCUR: SUSAN OWENS, MARY E. FAIRHURST, and JAMES M. JOHNSON, Justices.
NOTES
[1] Repealed by Laws of 2005, ch. 433, § 50.
[2] The superior court incorrectly relied on the current arbitration statute, the revised uniform arbitration act (RUAA), chapter 7.04A RCW. The RUAA states that "[t]his act does not affect an action or proceeding commenced or right accrued before January 1, 2006." RCW 7.04A.903. The Brooms filed their notice of claim on September 22, 2005. The court's error appears to make no difference, however, because the portions of the statutes relied upon are the same.
[3] Broom v. Morgan Stanley DW, Inc., noted at 146 Wash.App. 1043, 2008 WL 4053440 (2008); Tolson v. Allstate Ins. Co., 108 Wash.App. 495, 32 P.3d 289 (2001); Federated Servs. Ins. Co. v. Estate of Norberg, 101 Wash.App. 119, 4 P.3d 844 (2000); Lindon Commodities, Inc. v. Bambino Bean Co., 57 Wash.App. 813, 790 P.2d 228 (1990). This list does not include cases in which arbitration awards vacated by the trial court were later reinstated by the Court of Appeals.
[4] The dissent asserts that the parties did agree to apply the state statutes of limitations because they agreed to apply the NASD Code and arbitrators are given the power to interpret that code, however, as we have already discussed, the power to interpret the code does not equate to a power to contravene state law. In order for state statutes of limitations to be applicable to the Brooms' claims, the parties would have had to expressly agree to such applicability in their arbitration agreement.