FILED
COURT OF APPEALS DIV I
STATE OF WASHINGTON

2019 JAN 14 AM 10: 47



# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
## DIVISION ONE

| | |
|---|---|
| In the Matter of the Marriage of | No. 77891-9-I |
| DONETTE L. VENN, f/k/a ZBIKOWSKI, | |
| Respondent/Cross Appellant, | |
| and | |
| MARK J. ZBIKOWSKI, | UNPUBLISHED OPINION |
| Appellant/Cross Respondent. | FILED: January 14, 2019 |

VERELLEN, J. — An arbitrator does not exceed her authority when, consistent with a dispute resolution provision of a parenting plan including the parents' agreement to submit their parenting plan and child support disputes to arbitration, the arbitrator clarifies when a parent planning an overnight trip with a child must provide the other parent travel information, determines that tuition for public preschool qualifies as a supplemental educational cost to be paid by the father, and awards the mother a portion of her attorney fees. The superior court should have confirmed the entire award and denied the father's motion to vacate.

The superior court commissioner's precise grounds for awarding the mother a portion of her attorney fees incurred in superior court are not clear. And the mother is now eligible for an award of fees incurred in the superior court as the

entirely prevailing party under RCW 7.04A.250(3). We remand to allow the mother to reapply to the superior court to exercise its discretion under RCW 7.04A.250(3) as to fees incurred by the mother in superior court.

We affirm in part, reverse in part, and remand for further proceedings consistent with this opinion.

## FACTS

Donette Venn and Mark Zbikowski were married in 2007 and divorced in 2014. The dissolution of marriage included a final parenting plan and an order of child support for their three young children. The final parenting plan included a section on dispute resolution requiring that "[d]isputes between the parties, including child support disputes, shall be submitted to mediation . . . . If mediation does not result in an agreement, the mediator pursuant to RCW 7.04A will arbitrate the issue."[1]

On February 28, 2017, the mother initiated the dispute resolution process for the parenting plan and child support order. A May 2, 2017 mediation session was suspended. The parties completed mediation on June 15, 2017, and the issues remaining in dispute were submitted to arbitration. The arbitrator issued her decision on September 20, 2017. The arbitrator clarified how soon before an overnight trip the traveling parent is required to provide the travel information

---

[1] Clerk's Papers (CP) at 667.

required by the parenting plan.[2] The arbitrator also concluded the father's agreed obligation to pay supplemental educational costs extends to public preschool tuition for the youngest child. And the arbitrator awarded the mother fees she incurred for the suspended May 2 mediation.

The mother moved for an order confirming the arbitrator's decision, and the father moved to vacate the arbitration decision in part. On December 4, 2017, the superior court commissioner confirmed the arbitration decision in part but vacated the arbitrator's supplemental educational costs ruling and the fee award. The superior court commissioner awarded the mother part of her requested fees incurred in superior court. The father appeals the superior court's partial confirmation of the arbitrator's decision and partial award of fees. The mother cross appeals the superior court's partial vacation of the arbitrator's decision and failure to award all of her fees.

ANALYSIS

Standard of Review

Appellate review of an arbitrator's award is limited to the same standard applicable in the court which confirmed, vacated, modified, or corrected that award.[3] Judicial review "is confined to the question whether any of the statutory

---

[2] The parenting plan included a more detailed provision governing international travel. The arbitrator's ruling was limited to the parenting plan provision governing overnight domestic travel.

[3] Cummings v. Budget Tank Removal & Envtl. Servs., LLC, 163 Wn. App. 379, 388, 260 P.3d 220 (2011).

grounds for vacation exist."[4] The party seeking to vacate the award bears the burden of showing such grounds exist.[5] "One of the statutory grounds for vacating an award exists when the arbitrator has 'exceeded the arbitrator's powers.'"[6] An arbitrator exceeds her powers if the face of the award reveals an error such as deciding issues not referred to arbitration or an error of law.[7]

The "facial legal error standard is a very narrow ground for vacating an arbitral award."[8] Our courts have sparingly applied facial legal error as a basis to vacate.[9] It does not extend to a potential legal error that depends on the consideration of the specific evidence offered or to an indirect sufficiency of the evidence challenge.[10] Courts are not permitted to conduct a trial de novo when reviewing the award; they "do not look to the merits of the case, and they do not reexamine evidence."[11] "'The error should be recognizable from the language of

---

[4] Id.

[5] Id.

[6] Id. (quoting RCW 7.04A.230(1)(d)).

[7] Jensen v. Misner, 1 Wn. App. 2d 835, 850, 407 P.3d 1183 (2017); Salewski v. Pilchuck Veterinary Hosp., Inc., P.S., 189 Wn. App. 898, 903-04, 359 P.3d 884 (2015); Boyd v. Davis, 127 Wn.2d 256, 263, 897 P.2d 1239 (1995) ("In the present case, the face of the arbitral award alone does not exhibit an erroneous rule of law or a mistaken application of law. Therefore, no support exists for Petitioner's position that the arbitrator exceeded his power.").

[8] Broom v. Morgan Stanley DW, Inc., 169 Wn.2d 231, 239, 236 P.3d 182 (2010).

[9] Id.

[10] See Cummings, 163 Wn. App. at 389-90.

[11] Broom, 169 Wn.2d at 239.

the award, as, for instance, where the arbitrator identifies a portion of the award as punitive damages in a jurisdiction that does not allow punitive damages.'"[12]

Here, we review the superior court's decision whether to confirm or vacate the arbitrator's award under RCW 7.04A based upon whether the arbitrator exceeded her authority; the sole ground argued by both parties to the superior court and in their briefing on appeal.[13]

An entirely different standard of review applies to the award of attorney fees incurred in the superior court. "[W]e apply a two-part review to awards or denials of attorney fees: (1) we review de novo whether there is a legal basis for awarding attorney fees by statute. . . . and (2) we review a discretionary decision to award or deny attorney fees and the reasonableness of any attorney fee award for an abuse of discretion."[14]

---

[12] Cummings, 163 Wn. App. at 389 (quoting Federated Servs. Ins. Co. v. Pers. Representative of Estate of Norberg, 101 Wn. App. 119, 123-24, 4 P.3d 844 (2000)). "Where a final award sets forth the arbitrator's reasoning along with the actual dollar amounts awarded, any issue of law evident in the reasoning may also be considered as part of the face of the award." Id.

[13] The mother notes that neither party has advocated that the superior court should have conducted a broader de novo review of an alternative dispute decision and argues that, even under that standard, the mother would prevail. Because the parents submitted their motions to confirm and vacate to the superior court solely based solely on chapter 7.04A RCW (CP at 93, 247, 261, 275), and because both advocate that standard in their briefing to this court, we limit our review to the provisions of chapter 7.04A RCW governing confirmation or vacation of an arbitrator's award.

[14] Gander v. Yeager, 167 Wn. App. 638, 647, 282 P.3d 1100 (2012).

Clarification of When Travel Information Must Be Disclosed

The parenting plan contains a provision requiring the parents to disclose

certain travel information for an overnight domestic trip:

> If either parent has plans to travel with the children outside of the Seattle area for an overnight or longer, the other parent shall be provided an itinerary and contact telephone number(s) where the children may be reached while traveling. The itinerary will include sufficient information to locate the children if the need arises including but not limited to campground names, flight information, hotels, and trains.[15]

The parents submitted their dispute over the timeliness of notice to mediation

followed by arbitration. The arbitrator concluded:

> The itinerary and contact telephone number(s) will be provided to the non-traveling parent two (2) weeks before the travel but no later than 24 hours before departure if the plans are made less than two (2) weeks before departure.[16]

The father argues that the arbitrator exceeded her authority by modifying rather

than merely clarifying the parenting plan.

A "clarification" of a parenting plan is merely a definition of the rights the

court has already given the parties.[17] A court may clarify a parenting plan by

completely spelling out the parties' respective rights and obligations if the parties

cannot agree on the meaning of a particular provision.[18] Permissible clarifications

---

[15] CP at 172.

[16] CP at 22.

[17] In re Marriage of Holmes, 128 Wn. App. 727, 734-35, 117 P.3d 370 (2005) (quoting In re Marriage of Christel and Blanchard, 101 Wn. App. 13, 22, 1 P.3d 600 (2000)).

[18] Christel, 101 Wn. App. at 22.

include "explaining the provisions of the existing parenting plan" and "filling in procedural details" of the existing plan.[19] By contrast, a modification occurs when a party's rights are either extended beyond or reduced from those originally received.[20]

The father argues that the arbitrator's ruling reduced his rights to take his children on spontaneous overnight trips. He contends his only obligation is to disclose the required information before the trip actually begins.[21]

The parenting plan unequivocally requires the disclosure of travel information for overnight domestic trips. The plan does not indicate when the information is to be disclosed. Setting the time for the disclosure clarifies rather than modifies the plan because it defines and fills in the procedural details of the existing plan. Because the arbitrator merely clarified the parenting plan, the arbitrator acted within her authority. The superior court properly confirmed this portion of the arbitrator's award.

---

[19] See id. at 23.

[20] Rivard v. Rivard, 75 Wn.2d 415, 418, 451 P.2d 677 (1969).

[21] On this issue, the arbitrator made the following finding: "After considering the submissions and arguments of the parties, this Arbitrator FINDS the parents have an agreed shared residential schedule. Implicit in a shared residential schedule is a commitment by both parents to open communication. Further, such communication is in the best interest of the children. As an example, this Arbitrator FINDS providing such information to the non-traveling parent when the children are 12 minutes from taking off in an airplane is not within the acceptable bounds of notice from one parent to another and heightens the level of conflict between the parents which is not in the children's best interest. Further, such acts border on bad faith insofar as a parent's co-parenting of the children." CP at 21-22.

Support Obligation for Supplemental Educational Costs

The child support order contains several provisions governing educational costs:

1. The father shall pay 100 percent of agreed tutoring and other supplement[al] educational costs.

2. The father shall pay 100 percent of any agreed private school tuition.[22]

Although the father acknowledges he is obligated to pay 100 percent of private preschool tuition and that he agreed to send his youngest son to a less expensive public preschool, he balked at paying 100 percent of the less expensive public preschool tuition. He argues the child support order lacks any express provision that he pay more than his proportional share based on his scheduled residential preschool days.

On the face of the award, the arbitrator noted the father agreed to a tutor "which is a specific form of education supplementation," and therefore, "the phrase 'other supplement[al] educational costs' is clearly intended to mean he alternatively pays for other supplemental education costs 'of a like-kind to tutoring.'"[23] The arbitrator determined that preschool is "a form of 'other supplemental education' because the goals and activities [of preschool] advance a child's education and preparation for Kindergarten."[24] In a "very close call,"[25] the

---

[22] CP at 183.

[23] CP at 32.

[24] CP at 34.

[25] Report of Proceedings (RP) (Dec. 4, 2017) at 2.

superior court commissioner concluded that both parents were obligated to pay public preschool tuition in proportion to their income.

The parenting plan provides, "Disputes between the parties, including child support disputes," shall be submitted to mediation and then to arbitration if mediation is unsuccessful.[26] First, the father argues this was a modification of the child support order and an arbitrator has no authority to modify a child support order. But parents may agree to submit a child support dispute, including a modification, to arbitration.[27]

Second, the father argues there was no ambiguity in the child support order and the arbitrator incorrectly construed the order. But his arguments include references to background information such as the negotiation of the order by the parties. Because we are limited to the face of the award, we do not consider the background information argued by the father. And because "supplemental educational costs" is a broad term that extends to variety of education expenses, it was not an error of law for the arbitrator to conclude that public preschool tuition is a supplemental education cost because, like tutoring, it helps the youngest son prepare for kindergarten. Under the narrow standard of facial legal error, the father does not establish that the arbitrator exceeded her authority. We reverse the superior court ruling vacating the arbitrator's ruling on this issue.

---

[26] CP at 175.

[27] RCW 26.09.175(6) ("Unless all parties stipulate to arbitration . . . , a petition for modification of an order of child support shall be heard by the court.").

## Award of Attorney Fees

The arbitration rules signed by the parties expressly recognize that "[t]he Arbitrator shall have the authority to award fees and costs to either party."[28] The arbitrator awarded the mother $4,898 in fees and costs she unnecessarily incurred to prepare for the suspended May 2 mediation. The superior court commissioner vacated the award of attorney fees by the arbitrator, concluding that each parent should bear their own attorney fees arising out of the suspended mediation session.[29]

The arbitrator based her attorney fee award on RCW 26.09.140 and common law intransigence. First, she quoted case law applying the RCW 26.09.140 need and ability to pay standard. She expressly noted that based on the father's average monthly gross income of $77,000 with no debt other than a line of credit, he "has sufficient funds and financial resources" to pay his attorney fees.[30] The arbitrator also expressly noted that the mother has monthly net income of $17,207 and expenses of $14,366, so "it will be more difficult for [her] to pay off her attorney fees and costs [of $27,032]."[31] But on the face of the award, the arbitrator found the mother "is clearly wealthy and voluntarily underemployed. The fact that [the father] has wealth is not a basis for an award of fees."[32] To the

---

[28] CP at 323.

[29] Regarding the suspended mediation: "[T]o me it seems that the parties should bear their own fees." RP (Dec. 4, 2017) at 5.

[30] CP at 51.

[31] Id.

[32] CP at 49.

extent that the mother argues the arbitrator properly awarded fees under RCW 26.09.140, there was an error of law because of the finding that the mother is "clearly wealthy." RCW 26.09.140 allows for consideration of "the parties' relative ability to pay."[33] But where both parents are wealthy and able to pay their own fees without hardship, RCW 26.09.140 does not support an award of fees.[34] It was an error of law for the arbitrator to award fees under RCW 26.09.140.

Second, the arbitrator quoted case law applying the intransigence standard, including cases finding intransigence for making trial difficult, increasing legal costs unnecessarily, and foot dragging. The arbitrator expressly noted that when intransigence is found, "the financial resources of the party seeking attorney's fees need not be considered and are irrelevant."[35]

While the arbitrator did not expressly recite that the father was intransigent, she made findings consistent with intransigence:

> [The mother] *incurred fees unnecessarily on May 2, 2017* when [the father] submitted unsigned submissions on Ms. Gaston's firm's letterhead and she appeared with him but declined to enter a Notice of Appearance without first consulting lawyers at her office. *As a result, the mediation was suspended* until she resolved the issue and decided whether she would file a Notice of Appearance or be present during the mediation. . . . [The mother] *was prepared to proceed on*

---

[33] Leslie v. Verhey, 90 Wn. App. 796, 807, 954 P.2d 330 (1998).

[34] See Matter of Marriage of Kaplan, 4 Wn. App. 2d 466, 488, 421 P.3d 1046 (2018) (fees under RCW 26.09.140 not warranted where "[e]ach party is financially able to pay his or her attorney fees and neither would be under a critical hardship to do so"), review denied, 191 Wn.2d 1025 (2018); In re Marriage of Rostrom, 184 Wn. App. 744, 764, 339 P.3d 185 (2014) ("'superior ability to pay' alone does not address the requirements of RCW 26.09.140")

[35] CP at 50 (citing In re Marriage of Crosetto, 82 Wn. App. 545, 918 P.2d 954 (1996)).

11

> *May 2nd.* As a result of the suspension of the proceedings on May 2nd and the delay in not returning until June 15, [the mother] incurred unnecessary attorney fees and costs.[36]

A finding of intransigence does not require any particular words so long as the record clearly supports the existence of intransigence.[37] Here, when the father submitted unsigned materials on Perkins Coie letterhead and he was accompanied only by Gaston, it naturally led to the question whether Gaston was appearing as attorney for the father. The resulting suspension of the mediation to allow Gaston time to consult with attorneys in her office could be viewed as an unnecessary delay. Under the narrow standard of facial legal error, the father does not establish that the arbitrator exceeded her authority in awarding fees due to intransigence.[38] We reverse the superior court ruling vacating the arbitrator's ruling on this issue.

---

[36] CP at 51 (emphasis added).

[37] Crosetto, 82 Wn. App. 545, 564, 918 P.2d 954 (1996) ("Although the trial court did not make a finding of intransigence . . . the record discloses a continual pattern of obstruction" that constitutes intransigence.)

[38] The father argues that when the arbitrator limited the award of fees to those unnecessarily incurred by the mother for the suspended May 2 mediation, she made an error of law by indicating that Gaston should have known there would be no confidentiality under ER 408 if she was present during the mediation but did not appear as an attorney of record. Even though the arbitrator's reference to ER 408 and the impact on confidentiality is not legally accurate, the material portion of the arbitrator's analysis was the father's submission of unsigned materials on Perkins Coie letterhead when no attorney from that firm had appeared on behalf of him. Gaston, an attorney at Perkins Coie who was not a party to the mediation, accompanied him to the May 2 mediation. Gaston wanted additional time to consult with attorneys in her firm. Under the narrow facial legal error standard, the reference to ER 408 was not critical to the conclusion that the mother unnecessarily incurred fees because of the suspended session.

The superior court commissioner's rationale for awarding some of the mother's fees incurred in superior court is a bit jumbled. The commissioner confirmed the arbitrator's decision in part and vacated it in part. As to fees incurred by the mother in superior court, the commissioner awarded the mother $4,746 in attorney fees "for having to bring this motion [to confirm the arbitrator's decision]," and $2,150.00 in attorney fees "for having to respond to Respondent's motion [to vacate the arbitrator's decision in part]," for a total award of $6,896.[39] But it is not clear whether the commissioner blended two different legal theories:

> And I am essentially doing that on—I think that it is quite clear that [the father] has—he does have the ability to pay. He has not prevailed on all issues, but he has prevailed on two out of three issues.[40]

The father's ability to pay does not sustain an award under RCW 26.09.140 because the mother, who remains wealthy, makes no showing of any hardship from paying her own attorney fees. As to who was the prevailing party for purposes of RCW 7.04A.250(3), that is an entirely separate legal theory unrelated to the father's ability to pay. More importantly, we have concluded that the superior court should have confirmed the entire award and denied the father's entire motion to vacate.

---

[39] CP at 271.

[40] RP (Dec. 4, 2017) at 6. To determine the amount of fees to award the mother for responding to the father's motion to vacate in part, the superior court took the total amount of fees the mother incurred in responding, $6,440, divided by 3, making $2,146.66, and rounded up to $2,150. Neither the superior court's written order nor its oral ruling reflect that intransigence was considered in awarding fees, an alternate theory offered by the mother.

Under these circumstances, we vacate the superior court's partial award of attorney fees incurred and remand to allow the mother to reapply for a possible award of attorney fees under RCW 7.04A.250(3) as the prevailing party on the entire motion to vacate and her entire motion to confirm. We note that RCW 7.04A.250(3) permits but does not compel such an award; the court "may" add attorney fees to a judgment confirming an arbitrator's award.

Finally, the father seeks an award of his attorney fees on appeal to this court as the prevailing party under RCW 7.04A.250(3). But he is not the prevailing party. The mother requests attorney fees incurred on appeal to this court based on RCW 26.09.140, but she does not establish any hardship in paying her own fees. Because she's the prevailing party under RCW 7.04A.250, we award the mother her attorney fees on appeal.

We affirm in part, reverse in part, and remand for further proceedings consistent with this opinion.

WE CONCUR: