# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2005-CA-01661-SCT

*BREWER CONSTRUCTION COMPANY, INC.*

*v.*

*DAVID BREWER, INC., AND PEAR ORCHARD VICKSBURG, LLC*

*AND*

*MASSEY LAND & TIMBER, LLC*

*v.*

*DAVID BREWER, INC., PEAR ORCHARD VICKSBURG, LLC AND BREWER CONSTRUCTION COMPANY, INC.*

| | |
|---|---|
| DATE OF JUDGMENT: | 07/20/2005 |
| TRIAL JUDGE: | HON. FRANK G. VOLLOR |
| COURT FROM WHICH APPEALED: | WARREN COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANT: | JAN F. GADOW |
| | CLYDE X. COPELAND, III |
| | JEFFREY STEPHEN MOFFETT |
| | ROBERT NILES HOOPER |
| ATTORNEYS FOR APPELLEES: | SAMUEL C. KELLY |
| | CHERI TURNAGE GATLIN |
| NATURE OF THE CASE: | CIVIL - PROPERTY DAMAGE |
| DISPOSITION: | REVERSED AND RENDERED IN PART; REVERSED AND REMANDED IN PART - 08/24/2006 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE WALLER, P.J., EASLEY AND GRAVES, JJ.**

**EASLEY, JUSTICE, FOR THE COURT:**

## PROCEDURAL HISTORY

¶1. On June 20, 2001, David Brewer, Inc. (DBI), Brewer Construction, Inc. (BCI), and Bruce Hartfield, Inc. (Hartfield) filed suit against BellSouth Telecommunications (BellSouth), Deviney Construction (Deviney), and Curtis Wright Construction (Wright) in the Circuit Court of Warren County, Mississippi.

¶2. In April 2002, Joe Bonelli Construction Company, Inc. (Bonelli), Sanderson-Hollingsworth Builders, L.L.C. (Sanderson-Hollingsworth), and Hartfield intervened by filing a motion to allow intervention, cross-claims, and third-party claims. On April 11, 2002, the special master allowed the intervention and the attached proposed complaint, cross-claims, and third-party claims to be filed with the court. On April 12, 2002, Bonelli, Sanderson-Hollingsworth, and Hartfield filed their complaint and cross-claims against defendants, BellSouth, Deviney, and Wright; cross-claims against DBI and BCI; and third-party claims against Pear Orchard Vicksburg, L.L.C. (POV) and Massey.

¶3. BCI, with permission of the court, amended its complaint to include an indemnification claim against Massey for its negligence in the grading and compaction of the soil in the Pear Orchard subdivision. Massey was joined on July 3, 2002, as a party defendant. DBI and POV, with permission of the court, amended their complaint alleging that BCI and Massey breached their duty to properly construct and compact lots for the Pear Orchard subdivision. On April 6, 2004, the trial court entered an order for the special master requested by DBI and POV to handle the proceedings. DBI and POV filed a motion specifically requesting the appointment of a special master and provided the trial court with the name of the special master of their

2

choice. BCI filed for summary judgment against Massey on September 1, 2004. The special master denied the motion for summary judgment on October 28, 2004.

¶4. Prior to trial, all parties settled except DBI and POV (collectively the "Appellees") and BCI and Massey (collectively the "Appellants"). The special master heard the case on November 1-4, 2004. Following the trial, the special master accepted briefs from all of the parties involved on December 6, 2004. A draft copy of his report was sent to the trial court on December 21, 2004. In his report, the special master found that Webber Brewer (Webber) and Pear Orchard Development, Inc. (POD) each had a one-half interest in POV. David Brewer (David) was the owner of POD. The special master recommended a judgment in favor of DBI against BCI and Massey, jointly and severally, for $179,034.32; judgment in favor of POV against BCI and Massey, jointly and severally, for $401,760.80; and judgment in favor of DBI and POV against BCI and Massey, jointly and severally, for the special master's fee of $8,249.60.

¶5. Massey filed its objection to the special master's report raising eight objections. BCI filed its objection raising ten objections to the special master's report and a reply to Massey's objections in support of BCI's objections. The trial court on June 27, 2005, entered its order denying BCI's motion for credit or offset for the settlement of a co-defendant. On the same day, the trial court entered its order addressing the objections to the special master's report. The trial court found merit to some of the objections and reduced the amount of damages awarded to POV. Otherwise, the trial court stated that the special master's report was adopted by the trial court.

3

¶6.     The trial court entered its final judgment on July 25, 2005, finding BCI and Massey jointly and severally liable in the amount of $179,034.32, plus costs of court, in favor of DBI. The trial court also entered a final judgment, finding BCI and Massey jointly and severally liable in the amount of $349,718.90, plus costs of court, in favor of POV. The trial court then found that judgment should be granted in favor of BCI against Massey for full and complete indemnity to the extent BCI is required to pay the judgments to DBI and POV as stated above. BCI and Massey now appeal to this Court.

### FACTS

¶7.     Webber incorporated BCI on December 15, 1977. Webber was the sole owner of BCI. BCI purchased the subject property on December 10, 1996. In June 1999, Massey contracted with BCI to "cut and move approximately 74,000 yards of dirt . . . compact dirt to create as much usable property as possible, suitable for residential development." David, Webber's son, incorporated DBI on November 6, 1998. David was the sole owner of DBI. Massey quoted a lump sum price of $62,900 for the project. David contended that he was "continually kept in the know" through conference calls with his father as Massey was cutting and filling the subject property in 1999. However, David subsequently testified at trial that his company, DBI, had no involvement with the subject property until the summer of 2000 when DBI purchased parcels of land from POV in order to build houses. David testified that POV did not exist until March 13, 2000.

¶8.     Massey completed his work in September, 1999. After Massey completed his work in September 1999, neither BCI nor Massey completed a soil test on the subject property to

determine its worthiness for residential construction. Likewise, DBI did not have a soil compaction test completed when it bought a lot in the subdivision during the summer of 2000.

¶9.    POD was incorporated on February 23, 2000. David was the sole owner of POD. However, Webber served as the president of POD, and David served as the vice-president, secretary, and treasurer of POD. POD was administratively dissolved by the Mississippi Secretary of State on September 5, 2002, for the non-payment of franchise tax and/or failure to file an annual report. On January 8, 2003, POD filed an application for reinstatement which named David as the president.

¶10.    POV was incorporated on March 13, 2000, by Webber with David listed as its registered agent. Initially, Webber was the sole owner of POV. Some time later, Webber sold one-half interest in POV to POD. This sale eventually created two equal partners in POV, Webber and POD, which was solely owned by David.

¶11.    On March 17, 2000, BCI, as the sole owner of the subject property, transferred the land to Webber, individually. On the same day, Webber, as the sole owner of the subject property, transferred the land to the newly created limited corporation, POV. Neither David, DBI, nor POV had any ownership interest in the subject property at the time Massey performed and completed the dirt work in 1999.

¶12.    In June 2000, POV began selling lots to builders, including DBI. DBI and other builders began building houses in the subdivision. POV had BellSouth install telephone lines in the subdivision by the fall of 2000. By September 2000, DBI had completed one house in the subdivision. The subdivision began to settle by December 2000, including the houses, sidewalks, curbs, gutters, and roads. The trenches cut by BellSouth and its contractors were

5

left open for some period of time. As a result of the open trenches, damage to the subject property resulted. However, BellSouth and its contractors, Deviney and Wright, are not involved in this appeal. Likewise, the other builders, Bonelli, Sanderson-Hollingsworth, and Hartfield also settled their claims and are not part of this appeal.

¶13. BCI and Massey were found to be jointly and severally liable to POV and DBI. However, at the time BCI contracted with Massey to perform work, POV had not been formed. Also, the subject property was transferred in 2000 from BCI to Webber, individually, before it was subsequently transferred to POV in March 2000.

¶14. Recapitulation of time line of events pertinent to this appeal:

**December 1996** - BCI purchased subject property from Ellis Jabour Farris.
**June 1999** - BCI hired Massey to complete the dirt work.
**September 1999** - Massey completed the dirt work.
**February 23, 2000** - POD was incorporated. POD was administratively dissolved on September 5, 2002, and reinstated on January 8, 2003.
**March 13, 2000** - POV was formed and incorporated by Webber. Webber as the sole owner of POV subsequently transferred an one-half interest in POV to POD.
**March 17, 2000** - BCI transferred subject property to Webber, individually.
**March 17, 2000** - Webber, individually, transferred the subject property to POV.
**June 2000** - DBI, Sanders-Hollingsworth, Bonelli, and Hartfield began purchasing lots from POV to build homes.

## DISCUSSION

I. **Whether BCI was POV's general contractor which rendered BCI and Massey jointly liable to POV and DBI as determined by the special master and subsequently ratified by the trial court.**

¶15. The special master found that BCI was the general contractor hired by the owner of the property, POV, to perform the dirt work and Massey was BCI's sub-contractor and agent when

6

Massey contracted to and performed the dirt work on the land. Accordingly, the special master then determined that BCI and Massey were jointly and severally liable to POV and DBI for the damages because Massey was BCI's subcontractor and BCI was responsible for the failures of its agent, Massey. Massey was determined to be liable to BCI for complete and full indemnity. The trial court ratified and accepted the special master's report via its adoption of the findings of the report.

¶16. Fundamental to the special master's and the trial court's findings of fact is that the special master, and the trial court by ratification, reasoned that POV, as the owner of the property, hired BCI, as its general contractor, to perform the dirt work and BCI then hired Massey, as its subcontractor, to perform the dirt work. DBI and POV argue on appeal that it is a "red herring" as to who owned the property because BCI could still be the "general contractor" even if BCI was actually the owner of the property at the time the work was performed by Massey. While it is true that BCI, as the owner of the subject property, could be its own general contractor, the special master, and subsequently the trial court, erred in its analysis finding BCI and Massey jointly and severally liable to POV and DBI based on BCI being POV's general contractor and having hired Massey as its subcontractor to perform the dirt work.

¶17. Clearly, POV did not exist in 1999 when BCI owned the subject property and hired Massey to perform the dirt work. Massey performed and completed the dirt work in 1999 while the subject property was owned by BCI. According to the articles of incorporation, POV was not incorporated until March 2000; and therefore, POV unquestionably did not exist in 1999. As such, it is impossible for POV to have hired BCI as its general contractor to perform

7

the dirt work through Massey as BCI's subcontractor when it did not exist as a legal entity. With this fundamental error in the special master's and the trial court's reasoning, BCI and Massey cannot be held jointly and severally liable to POV and DBI.

¶18. "Mississippi judges have long had the power to appoint masters, referees, and commissioners as assistants to the court." M.R.C.P. 53 cmt. Mississippi Rule of Civil Procedure 53(g)(2) provides that where a special master is appointed, the trial court shall accept the special master's findings of fact unless manifestly wrong. The trial court may adopt the special master's report, modify the report, reject the report in whole or in part, receive further evidence, or recommit the report to the special master with further instructions. *See* M.R.C.P. 53(g)(2); *Trovato v. Trovato*, 649 So. 2d 815, 820 (Miss. 1995). The review of the special master's report shall be limited to questions of law only when the parties have stipulated that the special master's findings of fact shall be final. *Id.* at 820.

¶19. "The standard by which this Court reviews factual determinations made by a trial judge sitting without a jury is the substantial evidence standard." *Classic Coach, Inc. v. Johnson*, 823 So. 2d 517, 520 (Miss. 2002); *see Church of God Pentecostal v. Freewill Pentecostal Church of God*, 716 So. 2d 200, 204 (Miss. 1998) (citing *Hill v. Thompson*, 564 So. 2d 1, 10 (Miss. 1989); *UHS-Qualicare, Inc. v. Gulf Coast Cmty. Hospital*, *Inc.,* 525 So. 2d 746, 753 (Miss. 1987)). "A circuit court judge sitting without a jury is accorded the same deference with regard to his findings as a chancellor, and his findings will not be reversed on appeal where they are supported by substantial, credible, and reasonable evidence." *Donaldson v.*

8

*Covington County*, 846 So. 2d 219, 223 (Miss. 2003); *see Maldonado v. Kelly*, 768 So. 2d 906, 908 (Miss. 2000).

¶20.    BCI argues that the special master erred in finding that it was liable to POV and DBI. Likewise, BCI and Massey argue that the special master erred in finding BCI and Massey jointly and severally liable. We agree. Contrary to the special master's findings, POV did not exist at the time the dirt work was performed and completed by Massey, and BCI was the owner of the property at the time of the dirt work was performed and completed. David incorporated POV on March 13, 2000. David testified that he had no involvement with the subject property until 2000.

¶21.    BCI purchased the subject property on December 10, 1996. In June 1999, Massey contracted with BCI to perform the dirt work. Massey performed the dirt work from July to September 1999. POV did not exist until March 13, 2000. On March 17, 2000, BCI transferred the subject property to Webber, individually. Webber then transferred the subject property by warranty deed to the newly created limited corporation, POV. The warranty deed did not contain any warranty as to the condition of the land or the dirt work performed on the subject property. The warranty deed only referenced the mineral rights that had been retained when the property was originally transferred to BCI from Farris.

¶22.    In June 2000, POV began selling lots to builders, including DBI. DBI and the other builders began building houses in the subdivision. POV had BellSouth install telephone lines in the subdivision by the fall of 2000. The trenches cut by BellSouth were left open for some period of time. By September 2000, DBI had completed one house in the subdivision. The

9

subdivision began to settle by December 2000, including the houses, sidewalks, curbs, gutters, and roads.

¶23. The special master assigned ten percent of the damage to the subdivision to BellSouth. The special master found ninety percent of the damage resulted from Massey's failure to compact the land and determined that Massey and BCI were jointly and severally liable. Clearly, at the time the dirt work was performed, POV did not exist nor did it own the property. Therefore, BCI could not have been POV's general contractor at the time the dirt work was done. Accordingly, POV did not exist at the time as a legal entity to enter into any contract or agreement. As such, the special master's, and the trial court's, reasoning as how Massey and BCI were jointly and severally liable to POV and DBI is manifestly flawed.

¶24. The trial court adopted the special master's findings that "BCI implicitly warranted the work of Massey." The trial court stated, "Webber Brewer's testimony established BCI was acting as a general contractor for Pear Orchard [POV] and hired Massey to do the dirt work in a good and worksmanlike manner."

¶25. A review of the record reveals that Webber testified on cross-examination that POV was not incorporated, and as such did not exist, at the time Massey was hired by BCI to perform the dirt work and completed the dirt work in 1999. Webber testified that at the time Massey did the dirt work in 1999 BCI was the owner of the subject property, and POV was not incorporated until 2000. Further, BCI transferred the subject property to Webber, individually, on March 17, 2000. Webber, individually, not BCI, then transferred the subject property to POV. No written agreements, contracts, or warranties exist between BCI and POV or DBI

10

regarding the subject property.   The record reflects the following exchange during Webber's cross-examination:

> Q:   As between Pear Orchard Vicksburg and Brewer Construction, Inc., you understood that it was Brewer Construction, Inc.'s responsibility to oversee the dirt work and make sure it was done properly, right?
>
> Mr. Holland:   Objection.   Your Honor.   Pear Orchard Village [sic] [Vicksburg (POV)] was not even in existence at the time of development.   Unless he's going to give a date, I object to him asking questions as to what the responsibilities were.   In the developmental stage, Pear Orchard Village [sic] was not even created yet?
>
> The Court:   Put a date on that, Mr. Kelly.
>
> Q:   When you were talking with David Brewer about the plan for the subdivision, Mr. Brewer, you understood that Pear Orchard Vicksburg was going to be created at some point in the future and take over the development after the dirt work and sewer had been installed, right?
> A:   Yes.
> Q:   When you're talking with Mr. David Brewer about that plan as between Pear Orchard Vicksburg that was going to be created in the future and Brewer Construction, Inc., you certainly understood and accepted responsibility for the dirt work portion of the development, correct?
>
> Mr. Holland:   I have to object.   He's asking if he had responsibility to an entity that did not exist at the time these conversations occurred.   I think it's improper.   I think it is misleading to the witness about whether or not he intended to have an agreement with an entity that did not exist, Your Honor.
>
> The Court:   What do you say to that, Mr. Kelly?
>
> Mr. Kelly:   I think that clearly this witness has testified that was the intent of the parties, that they had discussed this plan, had developed this plan.[1]   And he understood that this entity

---

[1] Contrary to POV's counsel's line of questioning treating David and/or Webber as parties, neither David nor Webber were named as parties in this litigation in their individual capacity.

was going to be created in the future. So I think he is perfectly capable of responding to the question.

Mr. Holland: Our other objection, just for the record, is that the best evidence rule, if there's a contract, then that needs to be evidence as opposed to some oral understanding between two entities that did not exist.

The Court: Overruled.

Q: I am going to move forward. The bottom line is, Mr. Brewer, you understood that Brewer Construction, Inc., with respect to the development of Pear Orchard Subdivision[,] was undertaking to perform the dirt work or to have the dirt work performed through another entity?

A: That's correct.

* * *

Q: And did Brewer Construction, Inc., at the time of that transfer, discuss that with David Brewer as a representative of Pear Orchard Vicksburg?[2]

A: I don't know if I ever just discussed the land part with him. We talked about the subdivision, building houses on it. As far as the land, we didn't have any reason to talk about the land at that point.

* * *

Q: Now, at the time that Brewer Construction, Inc. – they contracted with Massey to do the dirt work out there on this property. Did I understand you to say, Mr. Kelly, [sic] [Mr. Webber] that at that point Pear Orchard Vicksburg was not formed? They were not actually incorporated?

A: That's right.

* * *

Q: Now, I understand you had an appreciation that Pear Orchard Vicksburg was going to be formed at the time you were talking with Massey. You also knew at that point, did you not, you were going to ultimately be in Pear Orchard Vicksburg, L.L.C., right?

---

[2] Again, contrary to this line of questioning and answering, the documents in the record unquestionably demonstrate that BCI did not transfer the subject land to POV. BCI transferred the land to Webber, individually. Webber, individually, then transferred the subject land to the newly created POV. This fact is routinely ignored and/or confused in the record, and this fact is crucial to understanding the error involved.

12

A: We actually hadn't even talked about Pear Orchard –

Q: I don't mean a specific name, sir.

A: I was going to be involved in buildings some houses, yes.

Q: Whatever the ultimate name was going to be, you understood that you personally were going to be a partner in that developer entity, whatever it ultimately was going to be?

A: Yes.

¶26. Webber testified that he did not recall having any conversation with David, as a representative of POV, after POV was created regarding anything to do with the land. He stated that "as far as the land, we did not have any reason to talk about the land at that point." Furthermore, David testified that he had no specific conversation with BCI about any soil compaction.

¶27. The special master acknowledged that no formal contract existed or was ever signed by POV to hire BCI as its general contractor to perform the dirt work performed by Massey. Furthermore, David testified that he did not become involved with the subject property until 2000. David further testified that BCI performed the dirt work to the land through Massey before POV was incorporated. BCI subsequently transferred the subject property to Webber, individually, who then transferred the subject property to POV.

¶28. As previously stated and restated for clarity, POV was incorporated on March 13, 2000. On March 17, 2000, BCI transferred the subject property to Webber, individually, who then on the same day transferred the subject property to POV, owned by Webber. POV subsequently transferred one-half of the property by POV to POD, owned by David. POV then transferred lots to DBI, owned by David, in the summer of 2000, and to the other builders, Hartfield, Bonelli, and Sanderson-Hollingsworth.[3]

---

[3] Hartfield, Bonelli, and Sanderson-Hollingsworth are not parties to this appeal.

13

¶29. The trial court specifically based BCI's liability to POV and DBI upon Massey's negligence in the performance of the dirt work. The trial court then erroneously determined that BCI acted as POV's general contractor and as such BCI warranted Massey's dirt work to POV.

¶30. Here, the documents in the record demonstrate that POV was not incorporated until March 13, 2000. Massey was hired in 1999 by BCI, the owner of the subject, to perform dirt work which Massey completed for BCI by September, 1999. Accordingly, the trial court's findings cannot be reconciled to the record we have before us on appeal. Clearly, Massey and BCI could not be jointly and severally liable to POV and DBI as determined by the trial court. Likewise, BCI cannot be liable to POV and DBI. BCI owned the land from 1996 to March 17, 2000, when it was transferred to Webber, individually, and then transferred the same day to POV from Webber. The chain of title/transfer as to the subject property was broken. Webber made no written warranty as to the dirt work performed by Massey for BCI to POV. Likewise, Webber testified that he did not discuss the dirt work with David as a representative of POV.

¶31. The special master and the trial court erred by treating BCI and Webber, not named as a party to this litigation, as being the same legal entity instead of as two separate and distinct legal entities. Therefore, the special master's and the trial court's reasoning are flawed.

¶32. A review of the record demonstrates that the attorneys and David were also clearly confused as to the legal distinction between BCI and Webber as separate and distinct legal entities. In fact, David's testimony at trial contradicts both his deposition testimony as well as earlier testimony at trial. David testified that POV was obligated to pay his father's company, BCI, $110,000 pursuant to a deed of trust in order to purchase the subject property

14

and $69,000 for the improvement to the land for Massey's dirt work. However, BCI did not sell the subject property to POV in order to be paid for the property. Webber, individually, sold the land to POV. Likewise, any improvement to the land, e.g., dirt work, would have passed to Webber when BCI transferred the subject property to Webber, individually, in the form of increased value to the property. Rather, Webber, not BCI, owned the subject property at the time it was transferred to POV.[4] The deed clearly states that Webber, individually, transferred the land to POV, not BCI.

¶33. David tried to clarify his testimony by stating that he was confused and meant to say that Webber was owed money for the subject property, not BCI. When David tried to clarify the financial arrangement regarding the subject property during cross-examination by BCI's counsel, David was referred back to his deposition wherein he testified that BCI was owed the money. Many pages of transcript later, David testified:

> It's easy to get [confused], when being asked all these questions and the same thing during [the] deposition, the Brewer Construction and the Webber Brewer and trying to separate those entities.

Later, the following transpired when David was cross-examined by BCI's counsel:

> Q:      You said it three times in here that even through Brewer Construction wouldn't get a part of the profit, it would get paid back for this land that it bought from Mr. Farris? That's what you said here three times, right?
> A:      That's what I said there, yes, sir.
>
> * * *
>
> A:      When I set up the company and we were trying to set those things up to where the money would flow back and go the proper way, we trust [sic] attorneys to do that. My father met with the attorney – we all met with

---

[4] BCI and Webber are separate and distinct legal entities.

15

attorneys to set that up. How the flow of that works, we have accountants and attorneys.

Q:     Your accountants and attorneys didn't answer this. To your understanding on the date of this, three times, sir, were that the land [sic] – the money for the land will be paid back to Brewer Construction?

A:     There's a lot of times I misunderstand things that my accountant and attorney has to straighten me out on.

¶34.   Therefore, we find that the trial court erred in finding BCI and Massey jointly and severally liable to POV and DBI. Likewise, the trial court erred in finding BCI liable to POV and DBI based upon Massey's negligence in the performance of the dirt work. Accordingly, this assignment of error requires reversal. Furthermore, the trial court's judgment in favor of DBI and POV against BCI and Massey, jointly and severally, for the special master's fee of $8,249.60 is reversed based on the reasons stated above regarding the lack of joint and several liability as to BCI and POV. The award of the special master's fee of $8,249.60 is reversed, and this case remanded to the trial court to assess the special master's fee between DBI and POV, the parties that requested the trial court appoint the special master to hear this case.

**II.     Whether the trial court erred in granting BCI indemnification from Massey.**

¶35.   Indemnity is defined as pertaining "to liability for loss shifted from one person held legally responsible to another person." Black's Law Dictionary 393 (5th ed. 1983). In *Home Ins. Co. v. Atlas Tank Mfg. Co.*, 230 So. 2d 549, 551(Miss. 1970), this Court held:

Two critical prerequisites are generally necessary for the invocation of non[-]contractual implied indemnity in Mississippi: (1) The damages which the claimant seeks to shift are imposed upon him as a result of some legal obligation to the injured person; and (2) it must appear that the claimant did not actively or affirmatively participate in the wrong. *Bush v. City of Laurel*, 215 So. 2d 256 (Miss. 1968); *Southwest Mississippi Electric Power Ass'n v. Harragill*, 254 Miss. 460, 182 So. 2d 220 (1966).

16

*See also* 3 Encyclopedia of Miss. Law, *Contracts* § 21:23 at 282-83 (2001).

¶36. In BCI's cross-claim for common law indemnity, BCI, while denying liability, sought to be indemnified by Massey in the event the fact finder held BCI liable. The trial court found BCI and Massey to be jointly and severally liable to POV and DBI. The trial court then found that judgment should have be granted in favor of BCI against Massey for full and complete indemnity to the extent BCI is required to pay the judgments to DBI and POV.

¶37. However, as stated above, the trial court erred in finding BCI and Massey jointly and severally liable to POV and DBI. The trial court based BCI's liability to POV and DBI upon Massey's negligence in the performance of the dirt work. However, POV was not incorporated until March 13, 2000; Massey was hired by BCI, the owner of the subject property, in 1999; and Massey completed the dirt work for BCI by September, 1999.

¶38. Furthermore, BCI cannot be liable to POV and DBI. BCI owned the land from 1996 to March 17, 2000, when it was transferred to Webber, individually. Webber then transferred the property to POV. The chain of title/transfer was broken as to the subject property. Webber made no written warranty as to the dirt work performed by Massey for BCI. Since BCI is not liable to POV and DBI based on the dirt work performed by Massey, BCI is not entitled to indemnification from Massey.

¶39. Therefore, we find the trial court erred in granting a judgment in favor of BCI against Massey for full and complete indemnity to the extent BCI was required to pay the judgments to DBI and POV. As such, this assignment of error requires reversal.

## CONCLUSION

17

¶40. For the foregoing reasons stated above, the judgment of the Circuit Court of Warren County, Mississippi, is reversed as to BCI's and Massey's joint and several liability in the amount of $349,718.90, plus costs of court, in favor of POV. The judgment of the Circuit Court of Warren County, Mississippi, is reversed as to BCI's and Massey's joint and several liability in the amount of $179,034.32, plus costs of court, in favor of DBI. Accordingly, judgment is rendered in favor of BCI and Massey as to joint and several liability to POV and DBI. Furthermore, based on the lack of BCI and Massey's joint and several liability to POV and DBI, the trial court's judgment ordering the special master's fee of $8,249.60 to be paid by BCI and Massey, jointly and severally, is reversed and this case remanded to the trial court to assess the special master's fee between DBI and POV. Based on the lack of BCI's liability to POV and DBI, the trial court's judgment granting BCI indemnification from Massey is reversed and judgment rendered in favor of Massey.

¶41. **REVERSED AND RENDERED IN PART; REVERSED AND REMANDED IN PART**.

**SMITH, C.J., WALLER, P.J., DIAZ, CARLSON, GRAVES, DICKINSON AND RANDOLPH, JJ., CONCUR. COBB, P.J., NOT PARTICIPATING.**