# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2022-CA-00938-COA

**MAC LONG HOMES, LLC AND NATIONWIDE MUTUAL INSURANCE COMPANY A/S/O MAC LONG HOMES, LLC**                                              APPELLANTS

v.

**OLVERA CONSTRUCTION, LLC**                                              APPELLEE

DATE OF JUDGMENT:                      08/18/2022
TRIAL JUDGE:                           HON. ALBERT B. SMITH III
COURT FROM WHICH APPEALED:             BOLIVAR COUNTY CIRCUIT COURT, SECOND JUDICIAL DISTRICT
ATTORNEYS FOR APPELLANTS:              JAY MARSHALL ATKINS
                                       VICTOR BRIAN BISHOP
ATTORNEYS FOR APPELLEE:                CHRISTOPHER SOLOP
                                       ROBERT A. BIGGS III
NATURE OF THE CASE:                    CIVIL - CONTRACT
DISPOSITION:                           AFFIRMED IN PART; REVERSED AND REMANDED IN PART - 05/07/2024
MOTION FOR REHEARING FILED:

**BEFORE WILSON, P.J., WESTBROOKS AND SMITH, JJ.**

**SMITH, J., FOR THE COURT:**

¶1. Mac Long Homes LLC and its insurance carrier, Nationwide Mutual Insurance Company (Nationwide) (collectively, Mac Long), filed a complaint in the Bolivar County Circuit Court against Olvera Construction LLC (Olvera) regarding masonry work that Olvera performed on fireplaces for a residential construction project. As the general contractor of the project, Mac Long asserted causes of action against Olvera for breach of contract, negligence, breach of the common-law duty to defend and indemnify, and negligent

misrepresentation. Olvera moved to dismiss Mac Long's complaint, and Mac Long moved to amend its complaint. The circuit court entered an order granting Olvera's motion to dismiss and denying Mac Long's motion to amend. On appeal, Mac Long argues the circuit court erred.

¶2. Upon review, we find that Mac Long's common-law indemnity claim against Olvera was premature and not ripe for review at the time Mac Long filed the complaint. We therefore affirm the portion of the circuit court's order dismissing the common-law indemnity claim, but we do so without prejudice to Mac Long's ability to renew its claim. We also find that the statute of limitations had run on Mac Long's claims for breach of contract and negligent misrepresentation. Thus, under Mississippi Rule of Civil Procedure 12(b)(6), we affirm the circuit court's decision to dismiss these two claims with prejudice. As to Mac Long's remaining cause of action for negligence, we find that the filing of the complaint tolled the applicable statute of limitations. We therefore reverse the portion of the circuit court's order dismissing the negligence claim, and we remand to allow for further proceedings as to that claim. As for the circuit court's decision to deny Mac Long's motion to amend its complaint, we find no abuse of discretion and affirm.

**FACTS**

¶3. In November 2015, Mac Long entered into a written contract with homeowners to build a residence in Arkansas. Mac Long then entered into an oral agreement with Olvera for Olvera to perform masonry work on the residence's interior and exterior fireplaces. The homeowners took possession of the residence in November 2016 following Mac Long's

2

completion of the construction. A little over two years later, on December 30, 2018, a fire occurred at the residence. The homeowners and their insurer filed a claim with the American Arbitration Association and sought damages from Mac Long. Despite Mac Long's attempt to include Olvera in the arbitration, Olvera never became a party in the arbitration proceedings.

¶4. On February 24, 2021, Mac Long filed a complaint in circuit court against Olvera and alleged that Olvera's deficient construction of the fireplaces caused the fire at the homeowners' residence. Mac Long asserted claims against Olvera for breach of contract, negligence, breach of the common-law duty to defend and indemnify, and negligent misrepresentation.

¶5. The parties agreed to stay their litigation pending the outcome of mediation. The mediation between Mac Long and Olvera occurred on June 17, 2021, and proved unsuccessful. On July 19, 2021, Olvera moved to dismiss Mac Long's complaint under Rule 12(b)(1) and (6). Ten days later, Mac Long sought a stay of the parties' legal proceedings pending the resolution of its arbitration with the homeowners. Mac Long's motion to stay the proceedings stated that the arbitrator's award was scheduled to be provided on August 27, 2021. Mac Long acknowledged that although its complaint against Olvera sought attorney's fees and arbitration expenses, the homeowners had not yet been awarded any damages pursuant to the arbitration proceedings.

¶6. On August 24, 2021, the arbitrator rendered an interim award against Mac Long. The final arbitration award against Mac Long was rendered on September 21, 2021. The final

arbitration award against Mac Long, which included damages, attorney's fees, and expenses, totaled $1,276,706.99. Mac Long and the homeowners entered into an assignment of rights and a covenant not to sue. Under the agreement, Mac Long's insurer, Nationwide, reimbursed the homeowners for certain arbitration expenses and paid Mac Long's insurance policy limit of $1,000,000. In exchange for the homeowners' agreement not to enroll and execute the judgment against Mac Long for the remaining amount of the arbitration award, Mac Long assigned to the homeowners and their insurance company a portion of Mac Long's right to recover any damages from Olvera. On January 21, 2022, a corrected final award of $1,268,207.99 was rendered in the arbitration proceeding. Also on January 21, 2022, Mac Long sought leave to amend its complaint against Olvera to include the corrected final arbitration award as damages. To comply with Mac Long's obligations to the homeowners and their insurance company, Mac Long also sought to amend the complaint to substitute the homeowners' insurance company as a party in interest against Olvera.

¶7.    On August 18, 2022, the circuit court entered an order granting Olvera's motion to dismiss the complaint with prejudice. The circuit court's order also denied Mac Long's motion to amend the complaint. Aggrieved, Mac Long appeals.

## DISCUSSION

¶8.    Mac Long argues that the circuit court improperly dismissed its complaint under Rule 12(b)(1) and (6). We "review[] a trial court's grant of a motion to dismiss de novo." *W. World Ins. Grp. v. KC Welding LLC*, 372 So. 3d 464, 467 (¶14) (Miss. 2023). In the complaint, Mac Long alleged that Olvera "breached the oral agreement entered between Mac

4

Long and [Olvera] when [Olvera] negligently constructed the fireplaces" at the homeowners' residence. Mac Long asserted causes of action against Olvera for breach of contract, negligence, breach of the common-law duty to defend and indemnify, and negligent misrepresentation. We address each cause of action separately.

## I. Breach of Contract

¶9. With regard to its breach-of-contract claim against Olvera, Mac Long alleged in its complaint that Olvera contracted to "[c]onstruct fireplaces safe from defects and with good workmanship" and to "[c]omply with requirements of all building codes, housing codes, and local codes . . . ." Mac Long further contended that Olvera "undertook a contractual obligation . . . to provide a fit, safe, and working fireplace" but then "breached that contract."

¶10. Mississippi Code Annotated section 15-1-49(1) (Rev. 2019) states that "[a]ll actions for which no other period of limitation is prescribed shall be commenced within three (3) years next after the cause of such action accrued, and not after." We have previously recognized that "[c]auses of action for breach of contract are subject to the three-year statute of limitations." *Rives v. Ishee*, 335 So. 3d 1098, 1101 (¶13) (Miss. Ct. App. 2022). "[I]f the claim is one that 'involves latent injury,' then 'the cause of action does not accrue until the plaintiff has discovered, or by reasonable diligence should have discovered, the injury.'" *Id.* (quoting Miss. Code Ann. § 15-1-49(2)). We define a latent injury "as one where the plaintiff will be precluded from discovering harm or injury because of the secretive or inherently undiscoverable nature of the wrongdoing in question or when it is unrealistic to expect a layman to perceive the injury at the time of the wrongful act." *W. World Ins. Grp.*,

5

372 So. 3d at 468 (¶18) (citation and internal quotation marks omitted). "For almost a century now, [the Mississippi] Supreme Court has held in the case of a breach of contract, the cause of action accrues at the time of the breach, regardless of the time when the damages from the breach occurred; this is the general rule." *Rives*, 335 So. 3d at 1102 (¶19) (citations and internal quotation mark omitted).

¶11. Here, Mac Long's written contract with the homeowners provided that although Mac Long could engage the services of subcontractors, Mac Long would not "be relieved or released from any of its obligations and responsibilities" and would still be required to "warrant[] the [p]roject to be free from all latent defects and from any defects due to non-compliance . . . for a period of one (1) year following closing or occupancy, . . . and from major defects . . . for a period of six (6) years following closing or occupancy . . . ." Thus, despite engaging Olvera to perform masonry work on the residence's fireplaces, Mac Long's contractual duties to the homeowners still required Mac Long to supervise Olvera's work. And through reasonable diligence in its supervisory capacity, Mac Long should have been able to discover any faulty masonry work that Olvera performed on the exterior patio fireplace at issue. We therefore can discern no latent injury implicated by Mac Long's breach-of-contract claim against Olvera.

¶12. Mac Long completed the residence's construction by November 2016, which was when the homeowners moved into the residence. The contractual breaches alleged by Mac Long focused solely on Olvera's masonry work and fireplace construction, and these would have occurred prior to the date of occupancy. Based on the record before us, we conclude

that the three-year statute of limitations on Mac Long's breach-of-contract claim began to run—at the latest—upon the residence's completion in 2016. As a result, the three-year limitations period would have ended in 2019, which was well before Mac Long filed its complaint against Olvera in February 2021. Due to the statutory time-bar, we find that Mac Long's cause of action for breach of contract failed to state a claim upon which relief could be granted under Rule 12(b)(6). We therefore affirm the portion of the circuit court's order dismissing Mac Long's breach-of-contract claim against Olvera.

## II. Negligence

¶13. "The statute of limitations for a negligence claim in Mississippi is three years." *McNair v. J.F.M. Inc.*, 323 So. 3d 1154, 1157 (¶9) (Miss. Ct. App. 2021). As this Court has previously recognized,

> for purposes of a statute of limitations, a cause of action accrues when it comes into existence as an enforceable claim, that is, when the right to sue becomes vested. For the right to sue for negligence to become vested, all elements of the tort must be present. The elements of negligence are duty, breach, causation, and damages.

*Smith v. DiMa Homes Inc.*, 74 So. 3d 377, 378 (¶8) (Miss. Ct. App. 2011) (citations and internal quotation marks omitted).

¶14. Here, the earliest date Mac Long could reasonably argue it suffered damages due to Olvera's alleged negligence would be the date of the fire on December 30, 2018. Under those circumstances, the three-year statute of limitations applicable to Mac Long's negligence claim would not have expired until December 30, 2021. Mac Long filed its complaint against Olvera in February 2021, and "[t]he filing of an action tolls the statute of

limitations until the expiration of the 120-day service period." *McNair*, 323 So. 3d at 1157 (¶9) (quoting *Triple C Transp. Inc. v. Dickens*, 870 So. 2d 1195, 1199 (¶32) (Miss. 2004)). We therefore reverse the portion of the circuit court's order dismissing Mac Long's negligence claim against Olvera, and we remand the matter to the circuit court for further proceedings as to this claim.

### III. Breach of the Common-Law Duty to Defend and Indemnify

¶15. Mac Long next asserted in its complaint that Olvera "had a duty to defend and indemnify" Mac Long in the arbitration proceeding against the homeowners. "Indemnity is defined as pertaining 'to liability for loss shifted from one person held legally responsible to another person.'" *Brewer Const. Co. v. David Brewer Inc.*, 940 So. 2d 921, 930 (¶35) (Miss. 2006) (quoting Black's Law Dictionary 393 (5th ed. 1983)). As the *Brewer* Court explained:

> Two critical prerequisites are generally necessary for the invocation of non-contractual implied indemnity in Mississippi: (1) The damages which the claimant seeks to shift are imposed upon him as a result of some legal obligation to the injured person; and (2) it must appear that the claimant did not actively or affirmatively participate in the wrong.

*Id.* (citations omitted).

¶16. "A cause of action must exist and be complete before an action can be commenced, and, when a suit is begun before the cause of action arises, it will generally be dismissed if proper objection is taken." *Durrant Inc. v. Lee County*, 344 So. 3d 291, 297 (¶16) (Miss. Ct. App. 2021) (quoting *State ex rel. Holmes v. Griffin*, 667 So. 2d 1319, 1325 (Miss. 1995)). Our supreme court recently reiterated "that a claim for common law indemnity does not arise until there is legal liability to pay a judgment that should in fairness be paid by another."

*Cooley v. Pine Belt Oil Co.*, 334 So. 3d 118, 129 (¶26) (Miss. 2022) (citation and internal quotation mark omitted). Here, the record clearly reflects that at the time Mac Long filed its complaint, the arbitration proceeding with the homeowners was still pending, and no final determination had been made. Thus, based on applicable caselaw, we conclude that at the time Mac Long filed its complaint, the common-law indemnity claim against Olvera was premature and not yet ripe for review.

¶17. The circuit court's order appears to have dismissed Mac Long's common-law indemnity claim as being statutorily time-barred. But, as stated, no claim could accrue until the arbitration award was entered against Mac Long. *Id.* Accordingly, the statute of limitations posed no bar to Mac Long's common-law indemnity claim.

¶18. Despite our finding that the statute of limitations failed to bar Mac Long's common-law indemnity claim, "[i]t is well settled that, in the name of judicial economy, an appellate court can affirm the circuit court's judgment if the right result is reached even though for the wrong reason." *Herbert v. Herbert*, 374 So. 3d 562, 570 (¶16) (Miss. Ct. App. 2023) (quoting *Mohead v. State*, 158 So. 3d 358, 360 (¶9) (Miss. Ct. App. 2014)). Due to the unresolved arbitration proceeding with the homeowners, we find that Mac Long prematurely asserted its common-law indemnity claim against Olvera. We therefore affirm the circuit court's decision to dismiss the common-law indemnity claim, but we do so without prejudice to Mac Long's ability to renew the claim once the matter is remanded to the circuit court for further proceedings on the negligence claim.

## IV.    Negligent Misrepresentation

9

¶19.    In asserting its final claim against Olvera, Mac Long argued that Olvera had "made negligent material misrepresentations [as] to its capabilities as a builder in the profession." Mac Long stated that it had relied on Olvera's representations to its detriment and had suffered damages as a result.  The three-year statute of limitations in section 15-1-49(1) applies to Mac Long's negligent misrepresentation claim.  *See Kelly v. Ocwen Loan Servicing LLC*, 329 So. 3d 439, 446 (¶23) (Miss. 2021) (finding no error in the chancellor's determination that the three-year statute of limitations applied to a party's claims of negligence and negligent misrepresentation).  Mac Long entered into its written contract with the homeowners in November 2015, and the homeowners moved into the completed residence in November 2016.  During that one-year period from November 2015 to November 2016, Mac Long entered into an oral agreement with Olvera for Olvera to perform masonry work and construct the residence's fireplaces.  Mac Long did not file its complaint against Olvera until February 24, 2021, which was over four years after the completion of the homeowners' residence.  We therefore find that this cause of action was statutorily time-barred, and we affirm the circuit court's decision to dismiss Mac Long's negligent misrepresentation claim.

¶20.    As a final matter, Mac Long challenges the circuit court's denial of its motion to amend the complaint.  The appellate courts "review[] a trial court's denial of a motion to amend a pleading for an abuse of discretion."  *Gilmer v. McRae*, 355 So. 3d 219, 227 (¶24) (Miss. 2022).  Based on our findings regarding each of the claims that Mac Long asserted in its complaint against Olvera, we find no abuse of discretion in the circuit court's ruling to

10

deny the motion to amend. We therefore affirm that portion of the circuit court's order.

## CONCLUSION

¶21.    We affirm the circuit court's order granting Olvera's motion to dismiss Mac Long's claims for breach of contract and negligent misrepresentation as statutorily time-barred. Upon review, we find that Mac Long's claim for common-law indemnity against Olvera was premature at the time that Mac Long filed its complaint. We therefore affirm the dismissal of that claim without prejudice. In addition, because the statute of limitations had not yet run on Mac Long's negligence claim against Olvera, we reverse the portion of the circuit court's order dismissing that claim, and we remand for further proceedings as to that claim. We also affirm the circuit court's decision to deny Mac Long's motion to amend its complaint.

¶22.    **AFFIRMED IN PART; REVERSED AND REMANDED IN PART.**

**BARNES, C.J., CARLTON, P.J., GREENLEE, McDONALD, LAWRENCE, McCARTY AND EMFINGER, JJ., CONCUR. WESTBROOKS, J., SPECIALLY CONCURS WITH SEPARATE WRITTEN OPINION, JOINED BY McDONALD AND McCARTY, JJ. WILSON, P.J., CONCURS IN RESULT ONLY WITHOUT SEPARATE WRITTEN OPINION.**

**WESTBROOKS, J., SPECIALLY CONCURRING:**

¶23.    Arbitration has been touted as an attractive forum for resolving legal disputes due to its efficiency, affordability, and the relief that it provides to our state courts. However, there are some disadvantages that can create problems for aggrieved parties who are not only bound by arbitration agreements, but seek to resolve their disputes without pursuing in-court litigation. I write specially to discuss the impediments of arbitration relative to joinder and statutes of limitations and highlight whether reasonable procedural safeguards could ensure

11

a more fair and well-defined arbitration process in our state.

¶24.     I agree that the trial court and the majority reached the right conclusion in this matter. Olvera Construction was not a party to the contract and, therefore, could not be required to participate in the arbitration proceeding. Arbitration usually results from a contractual agreement between parties. *Doe v. Hallmark Partners LP*, 227 So. 3d 1052, 1053 (¶1) (Miss. 2017). As with other contracts, our courts will apply a "four-corners test," and "we look to the language the parties used in their contract, reading the contract as a whole, so as to give effect to all of its clauses." *Noble Real Est. Inc. v. Seder*, 101 So. 3d 197, 202 (¶16) (Miss. Ct. App. 2012). In this case, section R-7 of the arbitration agreement implied that the parties may agree to join parties for dispute resolution. If not, the contract provided that if they came to an impasse, the AAA would appoint an arbitrator for the limited purpose of deciding whether a party should be joined.[1] What is elemental to joinder in arbitration is that the party must have been a participant in the contractual agreement. If the person or business does not sign or otherwise agree to be a party to the contract, there is likely no chance, as here, that the party will be compelled to arbitrate. Under certain circumstances, that seems unfair. Despite being at fault, Olvera Construction has been able to completely avoid any liability thus far (unless the indemnity claim becomes viable) simply because the company was not a party to the original contract that contained the arbitration clause.

¶25.     In contrast, joinder under the Mississippi Rules of Civil Procedure, particularly Rule

---

[1] Section R-7 also provided that requests for joinder must have been "submitted to the AAA prior to the appointment of arbitrator . . . or within 90 days of the date the AAA determined that all administrative filing requirements were satisfied, whichever [was] later."

20, takes a more expansive approach by looking at the litigable event(s) to determine whether a party should be joined. Relative to defendants, Rule 20 states, "All persons may be joined in one action as defendants if there is asserted against them jointly, severally, or in the alternative, any right to relief in respect of or arising out of the same transaction, occurrence, or series of transactions or occurrences, and if any question of law or fact common to all defendants will arise in the action." M.R.C.P 20(a). The advisory committee note to the rule explains that "[t]he phrase 'transaction and occurrence' requires that there be a distinct litigable event linking the parties." *Crossfield Prod. Corp. v. Irby*, 910 So. 2d 498, 500-01 (¶9) (Miss. 2005). Because consensual arbitration is contractual, and since the arbitration rules are not always reflective of our Mississippi Rules of Civil procedure, "endings" to cases like the one sub judice result. However, articulable and reasonable procedural safeguards are possible that would allow for statutes of limitations to apply to arbitration proceedings.

¶26. Arbitration agreements are governed by the Federal Arbitration Act (FAA). "When Congress enacted the FAA, its purposes were to establish a broad 'federal policy favoring arbitration,' and to require courts to 'rigorously enforce agreements to arbitrate.'" *MS Credit Ctr. Inc. v. Horton*, 926 So. 2d 167, 173 (¶15) (Miss. 2006); *see also* Federal Arbitration Act, 9 U.S.C. §§ 1–16. "[Q]uestions of arbitrability must be addressed with a healthy regard for the federal policy favoring arbitration." *E. Ford Inc. v. Taylor*, 826 So. 2d 709, 713 (¶11) (Miss. 2002) (quoting *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Co.*, 460 U.S. 1, 24-25 (1983)). "Mississippi acknowledges the strong federal policy favoring arbitration."

*Protect Your Home v. Thomas*, 331 So. 3d 537, 541 (¶13) (Miss. Ct. App. 2021) (citing *Adams v. Greenpoint Credit LLC*, 943 So. 2d 703, 708 (¶14) (Miss. 2006)). Accordingly, "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Id*. (quoting *Nethery v. Cap. S. Partners Fund II L.P.*, 257 So. 3d 270, 274 (¶18) (Miss. 2018)).

¶27.    Our courts generally apply "ordinary state-law principles that govern the formation of contracts" to arbitration provisions. *E. Ford*, 826 So. 2d at 713-14 (¶12) (quoting *Bank One N.A. v. Coates*, 125 F. Supp. 2d 819, 827 (S.D. Miss. 2001)). Thus, if parties wish to arbitrate their claims, they include a provision reflecting such intent in their contracts. Yet, despite these agreements being contractual, the arbitration itself operates like a tribunal proceeding: it is a forum that handles legal disputes where an impartial third party must review all the evidence and applicable law, and the award is legally binding. Accordingly, I believe some of the same procedural safeguards applied to civil court proceedings should also apply to arbitration proceedings. Parties who opt to arbitrate their claims, as opposed to litigate them in court, deserve a clear timeline for redress for their grievances. Plainly put, statutes of limitations applicable to claims brought in trial courts should be equally applicable to claims brought to arbitration.

¶28.    "A statute of limitation governs the time within which legal proceedings must be commenced after the cause of action accrues." 5 Jeffrey Jackson et al., *Encyclopedia of Mississippi Law*, § 44:16 (3d ed. updated Oct. 2023). Our Supreme Court has held that "a cause of action accrues 'when it comes into existence as an enforceable claim, that is, when

14

the right to sue becomes vested.'" *Weathers v. Metro. Life Ins. Co.*, 14 So. 3d 688, 692 (¶14) (Miss. 2009) (quoting *Bullard v. Guardian Life Ins. Co. of Am.*, 941 So. 2d 812, 815 (¶11) (Miss. 2006)). The cause will continue to accrue until the statutory time limit has lapsed or until the claim is filed in a trial court. "[T]he statute of limitations is tolled upon the filing of the complaint, and [the limitations period] does not begin to run again until litigation has ended." *Thornhill v. Ingram*, 178 So. 3d 721, 724 (¶14) (Miss. 2015) (quoting *Sweet Valley Missionary Baptist Church v. Alfa Ins. Corp.*, 124 So. 3d 643, 645 (¶8) (Miss. 2013)). However, parties who contract to arbitrate are not afforded this certainty. In Mississippi, there is no defined timeline because the statute of limitations continues to run on a claim while it is being pursued in arbitration, and parties are not able to assert a statute-of-limitations defense that would have been available in court.

¶29. I am aware that parties may specifically include provisions in the arbitration agreement that will impose time limitations. *See Townes v. Rusty Ellis Builder Inc.*, 98 So. 3d 1046, 1056 (¶29) (Miss. 2012) ("[W]e recognize the validity of agreements to toll statutes of limitation[.]"). However, I also acknowledge that there are parties who do not have the same negotiating acumen or power as the party drafting the contract. Most often, parties simply agree to arbitration clauses if they want the benefits and services provided by the business with which they wish to contract. This reality is even more reason why there should be some governance in this area. I believe that a statute that expressly provides a time frame to pursue claims in arbitration and allows tolling while the claim is being pursued would be a step in the right direction. Three states—New York, Georgia, and Washington—have done

15

just that.

¶30.     New York Civil Practice Law and Rules section 7502(b) provides:

> If, at the time that a demand for arbitration was made or a notice of intention to arbitrate was served, the claim sought to be arbitrated would have been barred by limitation of time had it been asserted in a court of the state, a party may assert the limitation as a bar to the arbitration on an application to the court . . . .

N.Y. C.P.L.R. § 7502(b) (McKinney 2005). Georgia Code Annotated section 9-9-5(a) states:

> If a claim sought to be arbitrated would be barred by limitation of time had the claim sought to be arbitrated been asserted in court, a party may apply to the court to stay arbitration or to vacate the award, as provided in this part. The court has discretion in deciding whether to apply the bar. A party waives the right to raise limitation of time as a bar to arbitration in an application to stay arbitration by that party's participation in the arbitration.

Ga. Code Ann. § 9-9-5(a) (current through 2023). Revised Code of Washington section 7.04a.090 provides in pertinent part: "A claim sought to be arbitrated is subject to the same limitations of time for the commencement of actions as if the claim had been asserted in a court." Wash. Rev. Code Ann. § 7.04a.090 (2013). Prior to Washington enacting its statute, the Washington Supreme Court ruled that the state's statutes of limitations did not apply to arbitrations. *Broom v. Morgan Stanley DW Inc.*, 236 P.3d 182, 188 (Wash. 2010). In that case, Dick Broom had investment accounts with a broker at Morgan Stanley. *Id*. at 183 (¶2). His accounts continuously declined in value until he died in 2002. *Id*. at (¶3). His children, who were his beneficiaries, filed an arbitration claim alleging "negligence, failure to make suitable investment recommendations, violation of state and federal securities law, breach of fiduciary duty, misrepresentation and omissions, failure to supervise, breach of contract, and violation of Washington's Consumer Protection Act (CPA), chapter 19.86 RCW." *Id*.

16

Morgan Stanley asserted a statute of limitations defense. *Id*. at (¶4). The arbitration panel

found that all claims except the CPA claim were barred by the statute of limitations. The

Brooms filed suit, and the trial court vacated the award holding that the statute of limitations

did not apply to arbitration. *Id*. at (¶5). The Washington Court of Appeals affirmed. *Id*. at

(¶5). The Supreme Court also affirmed, holding that arbitration was not considered an

"action" as provided in the statute:

> [T]he legislature chose its statutory language carefully to distinguish between arbitrations and judicial proceedings. In this case, as in *Thorgaard*, the parties' arbitration was governed by the [Washington Arbitration Act] WAA. Throughout the WAA, the legislature refers to arbitration variously as "arbitration," "hearing," or "proceeding," and to lawsuits as "civil actions," "actions," or "suits." Former RCW 7.04.030, .040, .070, .120, .180 (1943). The legislature maintained the distinction between the two types of proceedings in the [R]evised [U]niform [A]rbitration [A]ct (RUAA), carefully referring to arbitrations as "arbitration proceedings" and to lawsuits as "judicial proceedings" or "civil actions." RCW 7.04A.060, .080, .210. Nowhere in either act does the legislature refer to an arbitration as an "action." Nor does either act make state statutes of limitations applicable to arbitrations. This legislatively created distinction suggests that the legislature did not intend for arbitrations governed by the WAA and the RUAA to be deemed equivalent to judicial "actions."

This reasoning is the same one that numerous courts in other jurisdictions have used to justify

not applying their state statutes of limitations to arbitration. *See Skidmore Owings & Merrill*

*v. Conn. Gen. Life Ins. Co.*, 197 A.2d 83, 87 (Conn. Super. Ct. 1963) (stating "institution of

arbitration proceedings is not the bringing of an action under any of our statutes of

limitation"); *Har-Mar Inc. v. Thorsen & Thorshov*, 218 N.W.2d 751, 754 (Minn. 1974)

(explaining the term "action" in Minnesota statute of limitations was intended to be confined

to judicial proceedings); *Lewiston Firefighters Ass'n v. City of Lewiston*, 354 A.2d 154, 167

17

(Me. 1976) ("Arbitration is not an action at law and the statute is not, therefore, an automatic bar to the Firefighters' recovery."); *NCR Corp. v. CVS Liquor Control Inc.*, 874 F. Supp. 168, 172-73 (S.D. Ohio 1993); *Carpenter v. Pomerantz*, 634 N.E.2d 587, 589-90 (Mass. App. Ct. 1994); *Gannett Fleming Inc. v. Corman Constr. Inc.*, 220 A.3d 411, 424 (Md. Ct. Spec. App. 2019).

¶31.     However, there are two courts—the Florida Supreme Court and the Michigan Supreme Court—that have deviated from this rationale.  In Florida, a broker from Raymond James made an investment that caused significant devaluation in his clients' accounts. *Raymond James Fin. Servs. Inc. v. Phillips*, 126 So. 3d 186, 188 (Fla. 2013).  In accordance with their contract, the clients filed a joint claim for arbitration against him, alleging that he ignored their risk tolerance and made investments that were inconsistent with their objectives. *Id*. at 189.  Raymond James moved to dismiss the claims, arguing that they were barred by the statute of limitations. *Id*.  The investors sought a declaratory judgment in the trial court, asserting that Florida's statute of limitations applies only to judicial proceedings, not arbitration. *Id*.  The court granted the declaratory judgment, and the appellate court affirmed, holding that Florida's statute of limitations was not applicable to arbitration. *Id*. The Florida Supreme Court, however, had a different interpretation.  When considering whether an arbitration constituted a "civil action or proceeding" under the statute, the court looked to Black's Law Dictionary for guidance:

> Black's Law Dictionary defines "civil action" as "[a]n action brought to enforce, redress, or protect a private or civil right; a noncriminal litigation." Black's Law Dictionary 34 (9th ed. 2009).  It defines "proceeding" as "[a]ny procedural means for seeking redress from a tribunal or agency." *Id*. at 1324.

. . . [S]ince Black's Law Dictionary recognizes that a proceeding also includes a tribunal, the district court erred in failing to consider whether arbitration was a form of tribunal. As Black's Law Dictionary notes, a tribunal is "[a] court or other adjudicatory body." Black's Law Dictionary 1646 (emphasis added). The term adjudicatory refers back to adjudication, which is defined as both "[t]he legal process of resolving a dispute," as well as "the process of judicially deciding a case." *Id*. at 47. In addition, an arbitrator would fall under the definition of an adjudicator, which Black's Law Dictionary defines as "[a] person whose job is to render binding decisions." *Id*.

. . . .

Here, the Legislature used the phrase "civil action or proceeding." Whereas civil actions may be limited to court cases, a proceeding is clearly broader in scope. As the Legislature did not add the word "judicial" before the word "proceeding," limiting the term "proceeding" to apply to only judicial proceedings construes this term in a manner contrary to the language of the statute and the Legislature's intent.

126 So. 3d at 190. The Court ultimately held that Florida's statute of limitations is applicable to arbitration.

¶32. In Michigan, Nancy Nielsen underwent surgery at a hospital and signed an agreement to arbitrate any claims related to the care rendered to her during her hospital stay. *Nielsen v. Barnett*, 485 N.W.2d 666, 667 (Mich. 1992). Months after her release from the hospital, she filed suit against the hospital and her doctors, alleging medical malpractice. *Id*. The defendants filed a motion to dismiss and to compel arbitration, which the judge granted. *Id*. Nielsen filed a demand for arbitration sixteen months after the court's order and over three years after her release from the hospital. *Id*. In response, the defendants filed a motion to dismiss the claim as untimely because the statute of limitations on the medical malpractice claim had run. *Id*. The arbitration panel granted the motion, finding that the circuit court suit did not toll the statute of limitations. *Id*. Nielsen then sought to vacate the arbitration award

19

in circuit court, while the defendants countered to confirm the award. *Id*. The court confirmed the award, holding "[w]hether the timeliness of arbitration is controlled by statute of limitations, waiver, or laches, or all three, a delay which exceeds the statute of limitations applicable to the underlying claim, even when tolled by the lawsuit, is too long." *Id*. The Supreme Court of Michigan reversed, finding that the arbitration panel should not have applied the statute of limitations directly to bar Nielsen's claim but, instead, should have used it as a guide for the decision. *Id*. at 670-71.

¶33. At that time, the Michigan Compiled Laws Annotated section 600.5805 provided: "A person shall not bring or maintain an action to recover damages for injuries to persons or property unless, after the claim first accrued to the plaintiff, . . . the action is commenced within the periods of time prescribed by this section." M.C.L. § 600.5805(1). Nielsen argued that the statute did not apply to arbitration proceedings because it uses the term "action." *Nielsen*, 485 N.W.2d at 668-69. However, the Michigan Supreme Court did not find this persuasive. Although the court did not outright hold that the statute of limitations applied to arbitration proceedings, the court did hold that the arbitration panel did not exceed its authority by applying the statute of limitations to Nielsen's claim. *Id*. at 670. In making this determination, the Court rationalized:

> By enacting a statute of limitations, the Legislature determines the reasonable period of time given to a plaintiff to pursue a claim. *Lothian v. Detroit*, 414 Mich. 160, 165; 324 N.W.2d 9 (1982). The policy reasons behind statutes of limitations include: the prompt recovery of damages, penalizing of plaintiffs who are not industrious in pursuing claims, security against stale demands, relieving defendants' fear of litigation, prevention of fraudulent claims, and a remedy for general inconveniences resulting from delay. *Id*. at 166-167. Such policies, of course, are equally relevant both to actions filed in court and to

20

claims pursued in binding arbitration under the MAA.

*Id*. at 669. If our Legislature declines to enact an express statute, our Supreme Court could follow the approach taken by Florida and Michigan and interpret the word "action" in our statute of limitations to include arbitration proceedings.

¶34. Notably, we are seeing arbitration proceedings and statutes of limitations appear contemporaneously in cases. Our Court recently decided a case where a party attempted to use the statute of limitations to prevent a plaintiff from pursuing a claim through the arbitration process. In that case, Kenneth Coleman entered into a retail installment contract with Stan King Chevrolet Inc. for the purchase of a truck, and the contract contained an arbitration provision. *Coleman v. Stan King Chevrolet Inc.*, 378 So. 3d 964, 965 (¶3) (Miss. Ct. App. 2024). Stan King agreed that it would provide several accessories that Coleman requested. *Id*. However, Coleman sued the dealership because allegedly some of the accessories were never provided to him. *Id*. at 965-66 (¶¶2, 5). Stan King filed a counterclaim for breach of contract and a motion to compel arbitration. *Id*. at (¶6). The counterclaim was not properly answered, so the trial court entered a default judgment (instead of staying the action and compelling arbitration). *Id*. at 966 (¶13). Coleman appealed. We reversed the circuit court's judgment, stating that Stan King may have had good faith intentions to arbitrate when filing the motion to compel but concluding they pulled a "bait & switch" by insisting Coleman's claims were barred by the statute of limitations after the case was dismissed. *Id*. at 968 (¶14). We held that the statute of limitations had been tolled while the case was pending in circuit court, and any issues addressing the same were

21

left to the arbiter. *Id*. at 969 (¶16). I am certain that this will not be the last time that this Court will have to address issues with respect to arbitration proceedings and statutes of limitations. It would be wise for lawmakers and jurists to get ahead of the issue before it presents a problem for potential litigants in the future.

¶35. I believe this issue is one Mississippians face and is worth highlighting. By examining the approaches taken by other states, we can better understand what changes can be made to improve our current system. Mississippi has an opportunity to help lead other states with regard to arbitration. We can implement measures that will promote equity and provide more certainty in the arbitration process, whether that be through legislative action or judicial interpretation. Accordingly, I urge our lawmakers to consider either (1) enacting a statute that will allow statutes of limitations to apply in arbitration; or (2) interpreting the word "action" in our current statute of limitations to include arbitration proceedings. I specially concur.

**McDONALD AND McCARTY, JJ., JOIN THIS OPINION.**